Henry TRUSTY, Appellant,

v.

Carl JONES and Delbert Peldo, Appellees.

No. 95.

Supreme Court of Alaska.

March 3, 1962.

———◆———

James K. Tallman of Bell, Sanders & Tallman, Anchorage, for appellant.

L. Eugene Williams, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

At the conclusion of plaintiff's evidence in an action in claim and delivery the trial court granted judgment for defendants. The court's action was based on the premise that plaintiff's evidence proved that he had abandoned the caterpillar tractor which he was seeking to reclaim. Plaintiff appealed on the ground that the judgment was against the weight of the evidence.

Appellant acquired the machine by purchase in 1953 and loaned it to one Antone in February of 1954. It was damaged while in Antone's possession and a dispute arose over who should pay the repair bill. In June of 1954 appellant commenced a claim and delivery action and by posting bond regained possession from Antone. The machine was not in running condition and appellant had no low-boy with which to transport it, so it was left by the United States Marshal on the highway right of way in front of Antone's property. Appellant had obtained permission from the highway commissioner to leave the cat on the right of way. Appellant's home was located about one mile distant on the same highway. According to appellant, several days after he had thus obtained possession of the cat, Antone dragged it into a side road between Antone's property and that of Jack Kerns, where he turned it over and left it. Appellant found the machine and obtained permission from Kerns to leave it on the latter's property until appellant had repaired it.

Appellant worked on the cat during the latter part of 1954 and during the summer of 1955, reworking parts and installing new rings. In November of 1955 appellant became ill and went outside Alaska for medical treatment asking one Mac McCoy to watch the caterpillar. Appellant testified that he had no intention of remaining away from Alaska and did not sell any of his property with the exception of an automobile. From November of 1955 the cat remained where appellant had left it on Kerns' property. In May or June of 1957, while still outside Alaska, appellant received word that the cat was missing. Appellant immediately wrote to the state police for information but was advised that they

knew nothing about a cat being stolen. It appears that in May of 1957 one Fowler had removed the cat from Kerns' property and sold it to Jones on May 27, 1957 for $400.

Appellant returned to Alaska in June of 1958 and complained of a theft of the cat to the United States Attorney. He was later advised by that official that there was insufficient evidence to prosecute and convict. Appellant's original action in claim and delivery against Antone was dismissed by the United States District Court for the District (Territory) of Alaska in Anchorage in July of 1958 for failure to prosecute. Appellant's attorney in that action had moved from Alaska to Los Angeles. Appellant was residing at Kenai and did not learn of the dismissal until some time after it had occurred.

Appellant located the cat at Peldo's residence by checking with the Northern Commercial Company where he learned that Peldo had purchased a head for a cat of that unique model. Within two weeks of the time appellant had discovered that the cat was in the possession of Peldo the present action in claim and delivery was commenced.

After plaintiff had rested, the court called upon counsel for defendants to proceed. Thereafter the courtroom proceedings seem to have had no direction or purpose. The defendants made no motion; they did not rest, nor did they offer any evidence. As far as the record discloses the court made no attempt to give direction and guidance to the trial. A discussion between counsel and the judge occurred as to whether the serial numbers of the cat mentioned in appellant's testimony referred to the machine in one of the defendant's possession. Abandonment was then brought into the discussion. The court then stated to counsel for appellant, who had just rested his case:

"The Court: You may proceed with your argument Mr. Tallman.

"Mr. Tallman: Ah, you mean Your Honor, with respect to this ah identification of this particular caterpillar?

"The Court: The question of abandonment.

"Mr. Tallman: Oh abandonment. Well, * * *." [Counsel then proceeded to argue as required.]

Abandonment had been pleaded as a defense to the action by defendants. It had also been listed in defendants' pre-trial memorandum as one of the issues of fact to be tried. Accession had also been raised as an issue by defendants. Since no motion was made by defendants at the close of plaintiff's case, the court should have required the defendants to proceed with the presentation of their evidence. After requiring argument on the question of abandonment the court found that there had been an abandonment and held for the defendants.

A study of the record convinces us that at the close of appellant's evidence he had presented a prima facie case in support of his action in claim and delivery. His statements made on the witness stand were to the effect that he had absolutely no intention of abandoning the chattel. His attempts to regain and maintain possession of the property are contrary to an inference that he intended to abandon with the possible exception of his action in leaving Alaska for an extended period of time commencing in November of 1955. But even during this period he says he had someone watching the property and immediately corresponded with the police when he learned of its disappearance. The dismissal of his original action in claim and delivery would hardly support an inference of an intent to abandon in view of appellant's testimony. He had succeeded in regaining possession of the machine by that action and as to the defendant Antone, appellant still had possession.[1] Appellant's

1. The trial judge's memory of the testimony was faulty. In his oral decision, in

referring to the original claim and delivery action against Antone and the re-

attorney had removed his office from Alaska. Apparently no attorney was taking care of appellant's case in the Anchorage courts when it was dismissed for lack of prosecution. Appellant was in Kenai and only learned of the dismissal after it had happened.

In many respects this case is similar to Rogge v. Weaver.[2] There we held that where plaintiff at the close of his evidence had presented a prima facie case based on unimpeached evidence, the trial judge should not grant a motion for involuntary dismissal under Civil Rule 41(b). We held that in such instances the judge should follow the alternative provided by the rule and decline to render any judgment until the close of all the evidence.[3]

In the case before us the judge granted judgment for the defendants, not on the ground that plaintiff had failed to prove a prima facie case in claim and delivery, but on the ground that the defense of abandonment had been proved. Appellant's entire case was prima facie contrary to any inference that he intended to abandon. The effect of the court's action was to pre-judge appellant's prima facie case at the very point in the trial when he should have accorded it sufficient weight to require the defense to proceed. We recognize that in non-jury cases the trial judge is the ultimate trier of the facts. It may happen that at the close of plaintiff's evidence the trial judge is unimpressed with the plaintiff and his evidence. He may feel that it is a waste of time not to grant dismissal at that point in the trial rather than continue until the defense has been heard. Even so, under the Rogge rule it would be error to dismiss if the plaintiff had presented a prima facie case. In those situations the trial judge must decline to grant judgment until he has heard both sides of the case. We believe the Rogge rule is more likely to achieve justice and reduce the number of appeals resulting from the application of Rule 41(b) than an interpretation permitting the judge to dismiss in close cases before he has heard both sides of the issues and has obtained a complete picture of the controversy.

We are disposing of this case on the basis that the granting of judgment for defendants was the equivalent of ordering involuntary dismissal under Rule 41(b). The judgment is reversed and the case is remanded for the purpose of completing the trial. If for any reason it is impracticable to complete the trial, a new trial shall be granted.

AREND, Justice (dissenting).

In Rogge v. Weaver[1] I dissented from the court's ruling regarding Civil Rule

---

taking of possession by appellant, the judge stated:

"And then later Mr. Antone removed it. He took it into his possession."

As counsel for appellant aptly points out, there is no basis anywhere in appellant's testimony to support the judge's conclusion.

2. 368 P.2d 810 (Alaska, Feb. 6, 1962).

3. Civil Rule 41(b) states:

"(b) *Involuntary Dismissal—Effect Thereof.* For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff *or may decline to render any judgment until the close of all the evidence.* If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). A dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party does not operate as an adjudication upon the merits. Any other dismissal not provided for in this rule and a dismissal under this subdivision operates as an adjudication upon the merits, unless the court in its order for dismissal otherwise specifies." [Emphasis ours.]

1. 368 P.2d 810 (Alaska, Feb. 6, 1962).

41(b). In that case I did not consider it appropriate to do more than register a bare dissent since it was not at all clear to me whether the court was merely making suggestions with respect to the administration of the rule or whether the court was holding that the trial court had committed reversible error in interpreting the rule as it did.

In the instant case my brothers clearly hold that when a plaintiff has made out a prima facie case it is reversible error to dismiss his case under Rule 41(b) before the defendant has rested. A trial court may no longer dismiss upon completion of the plaintiff's case even though it is convinced as the *trier of fact* that the plaintiff has failed to prove his case by a preponderance of the evidence, or, as in the instant case, even though the trial court is convinced that, notwithstanding plaintiff has made out a prima facie case, plaintiff has shown by a preponderance of his own evidence the existence of facts upon which an affirmative defense was pleaded.

I am not here concerned with the merits of my brothers' interpretation of the rule. The proper place for such concern is in the exercise of our rule making power, pursuant to which, I might add, the rule was adopted.

The third sentence of Rule 41(b) reads: "In an action tried by the court without a jury the court as *trier of the facts* may then determine them and render judgment against the plaintiff or *may* decline to render any judgment until the close of all the evidence." (Emphasis supplied.) I do not think it even arguable that the quoted language admits of the gloss placed upon it by the court. It would be euphemistic to characterize the court's decision as judicial; it is decision by fiat.