**In the Matter of the ADOPTION OF L. A. H.**

**No. 3853.**

Supreme Court of Alaska.

June 22, 1979.

---

Noel H. Kopperud, Wasilla, for appellants.

Ronald C. Mattson, Mattson & Stefnik, Bellevue, Wash., for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Justice.

The single issue presented in this appeal is whether the superior court erred in affirming a master's report which recommended denial of a petition for adoption and legitimated the minor adoptee L. A. H. The petition for adoption was filed by appellant Sam S. Hermon, who had recently married the natural mother of the child. The petition was opposed by James D. Psenak, the natural father of the child. The probate master found that Psenak had legitimated the child by an acknowledgment

in writing[1] and by conducting himself in a manner which indicated that the child was his, pursuant to AS 25.20.050(a).[2] The probate master made the further finding that the consent of the natural father to the child's adoption was required by virtue of the provisions of AS 20.15.040(a)(2).[3] Since the natural father did not consent, and the evidence was not sufficient to dispense with his consent pursuant to AS 20.15.050(a),[4] the probate master recommended that the petition for adoption be dismissed.

The child's natural father then filed a motion requesting the superior court to approve the probate master's report and to dismiss the adoption petition. Appellants

---

1. James D. Psenak filed an affidavit in which he averred, in part:

> 3. Judy A. Ehmann gave birth to a baby girl in Palmer, Alaska on December 5, 1973.
> 4. The name of said baby girl is [L. A. H.].
> 5. I am the father of the said [L. A. H.].
> 6. Judy A. Ehmann and I have acknowledged repeatedly to various people that we both are the parents of [L. A. H.].
> 7. If obligated to do so, I will pay a reasonable amount for the support of my daughter, [L. A. H.].

The probate master found:

> 1. That the alleged father has legitimated the minor adoptee pursuant to AS 25.20.050;
> 2. That by such legitimation, his consent to the adoption is required pursuant to AS 20.15.040, and he does not consent;
> 3. That the evidence is not sufficient to dispense with his consent pursuant to AS 20.15.050;
> 4. That the petition to adopt should be dismissed because of items 1, 2, and 3;
> 5. That pursuant to AS 25.20.050 a certified copy of Respondent's Exhibit # 1 together with a certified copy of an order of adjudication that [L. A. H.] is the daughter of James D. Psenak and Judy A. Hermon, nee Ehmann, be sent to the Bureau of Vital Statistics directing it to prepare and place on file a substitute birth certification;
> 6. Find that Mr. Psenak should pay a reasonable sum as support of the minor;
> 7. Find that as a natural parent, Mr. Psenak should have reasonable visitation rights.

2. AS 25.20.050(a) provides:

> A child born out of wedlock heretofore or hereafter shall be legitimated and considered the heir of the father who (1) shall subsequently intermarry with the mother of the child; (2) shall in writing acknowledge his paternity of the child; or (3) shall be adjudged to be the father by a superior court, upon sufficient evidence. Acceptable evidence includes, but is not limited to, evidence that the alleged father so conducts and bears himself toward the child, either by word or act so as to indicate that the child is his, and such conduct may be construed by the court to constitute evidence of paternity. Extrinsic evidence may be employed by the court to show intent when indefinite, ambiguous, or uncertain terms are used.

3. AS 20.15.040(a) provides, in pertinent part:

> Unless consent is not required under § 50 of this chapter, a petition to adopt a minor may be granted only if written consent to a particular adoption has been executed by
> (2) the father of the minor, if the father was married to the mother at the time the minor was conceived or at any time after conception, the minor is his child by adoption, or he has otherwise legitimated the minor under the laws of the state.

4. AS 20.15.050(a) provides:

> Consent to adoption is not required of
> (1) for purposes of this section, a parent who has abandoned a child for not less than six months;
> (2) a parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause, including but not limited to indigency,
> (A) to communicate meaningfully with the child, or
> (B) to provide for the care and support of the child as required by law or judicial decree;
> (3) the father of a minor if the father's consent is not required by § 40(a)(2) of this chapter;
> (4) a parent who has relinquished his right to consent under § 180 of this chapter;
> (5) a parent whose parental rights have been terminated by order of the court under AS 47.10.080(c)(3);
> (6) a parent judicially declared incompetent or mentally defective if the court dispenses with the parent's consent;
> (7) any parent of the person to be adopted, if the person is 19 or more years of age, and the court dispenses with the consent of the parent;
> (8) any guardian or custodian specified in § 40(a)(3) or (4) of this chapter who has failed to respond in writing to a request for consent for a period of 60 days or who, after examination of his written reasons for withholding consent, is found by the court to be withholding his consent unreasonably; or
> (9) the spouse of the person to be adopted, if the requirement of consent to the adoption is waived by the court by reason of prolonged unexplained absence, unavailability, incapacity, or circumstances constituting an unreasonable withholding of consent.

responded by filing a motion in which they sought to set aside the probate master's findings and recommendations and to obtain a trial de novo. Thereafter, the superior court entered an order· approving the master's findings and denying the petition for adoption.[5] This appeal followed. We affirm.

The central question presented by this appeal focuses upon the interplay between the legitimation procedures provided for in AS 25.20.050(a)[6] and the adoption statute which requires the consent of the father who "has otherwise legitimated the minor under the laws of the state."[7] If Psenak, the natural father, had legitimated L. A. H., his consent to her adoption is required by AS 20.15.040(a)(2).[8]

Under AS 25.20.050(a),[9] a child may be legitimated by subsequent marriage of the natural parents, acknowledgment in writing, or adjudication by the superior court. That statute also provides that acceptable evidence for use by the superior court in adjudicating legitimacy includes evidence that the alleged biological father has conducted himself in a manner indicating that the child is his. As indicated previously, the probate master found that Psenak had legitimated the child by filing an affidavit of his paternity and by conducting himself as the father of L. A. H.[10] Additionally, it was found that by virtue of such legitimation the consent of the father was required[11] and that since he did not consent, the petition for adoption should not be granted.

We hold that both the probate master and the superior court judge correctly construed and applied the relevant legitimation and adoption statutes in the case at bar. In short, we reject appellants' contention that the filing of an adoption petition precludes the biological father from thereafter filing a written acknowledgment

---

5. The superior court must accept the master's findings of fact unless clearly erroneous but is free to adopt, modify, or reject the master's report in whole or in part. Alaska R.Civ.P. 53(d)(2) provides:

> (2) *In Non-Jury Actions.* In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

*See Hickey v. Bell,* 391 P.2d 447, 448 (Alaska 1964).

6. See note 2 *supra.*

7. AS 20.15.040(a)(2). For the text of this statute, see note 3 *supra.*

8. *See Delgado v. Fawcett,* 515 P.2d 710, 712 (Alaska 1973), where we expressed our approval of the Supreme Court of Minnesota's construction of a consent statute similar to Alaska's:

> The correlative rights and duties inherent in the parent-child relationship are natural rights of such fundamental importance that it is generally held that parents should not be deprived of them 'except for grave and weighty reasons.' In an adoption proceeding, where an absolute severance of this relationship is sought, the consent provisions are designed to protect the natural rights of a parent to the custody, society, comfort, and services of the child.

*Id., quoting In re Parks' Petition,* 267 Minn. 468, 127 N.W.2d 548, 553 (Minn.1964) (footnote omitted).

9. See note 2 *supra,* for the text of AS 25.20.-050(a).

10. The master's report states:

> The legitimation code also provides that the same may be accomplished by judgment of the Superior Court upon sufficient evidence, among which acceptable evidence is that the alleged father conducts himself as such. Both parents acknowledge he is the father. They have lived together with the child off and on after her birth from sometime in 1974 until early 1977; the child was acknowledged his to their friends and relatives. The alleged father testified he wanted his name on the birth certificate, but he testified the mother refused to cooperate in making the necessary affidavit to change the birth certificate. Alleged father has maintained a house and paid some support, part of the time involved, of both the mother and the child.

11. See AS 20.15.040(a), the text of which is set out in note 3 *supra.*

of his paternity of the subject child. Under the existing provisions of AS 25.20.050(a) and AS 20.15.040(a), an acknowledgment of paternity can be filed at any time before the entry of a decree of adoption.[12] Since the acknowledgment was timely filed, the consent of the biological parent was required. This consent was not forthcoming and the record sustains the master's conclusion that there was insufficient evidence to dispense with the father's consent under the provisions of AS 20.15.050.[13]

[7] We have reviewed all of the contentions advanced by appellants [14] and have concluded that they should be rejected. Admittedly, appellants have advanced cogent policy arguments against interpreting Alaska's legitimation and adoption statutes as granting the biological father in effect a veto over an adoption proceeding.[15] Never-

12. Though the adoption statutes require that the petition for adoption list "the name of any person whose consent to the adoption is required, but who has not consented, and facts and circumstances which excuse the lack of his consent," AS 20.15.080, the filing of the petition does not end the inquiry into required consents. AS 20.15.100(a) requires that notice of the filing of the petition and of the time and place of the hearing must be given to any person whose consent is required but who has not consented, as well as to "a person whose consent is dispensed with upon any ground mentioned in § 50(a)(1), (2), (3), (6), (7), (8) and (9) of this chapter, but who has not consented." Further, "[a] reasonable investigation shall be made by the department or the petitioner to assure that all persons listed in (a) of this section are located and given notice of the proposed adoption." AS 20.15.100(c). Finally, upon conclusion of the hearing on the petition for adoption, a final decree of adoption may be issued by the court only if the judge determines that the required consents have been obtained or excused. AS 20.15.120(c).

This statutory scheme clearly contemplates a separate determination by the court as to the status of required or excused consents prior to the granting of the decree of adoption. Given the concern expressed in the adoption statutes regarding the required consents, and the purposes of the consent requirement as articulated in *Delgado v. Fawcett*, 515 P.2d 710, 712 (Alaska 1973), and set out in note 8 *supra*, we think that the silence of the legislature as to the time for legitimation should be construed in favor of the adoptee's natural father. Appellants' contention that construing the applicable statutes to allow legitimation at any time before the entry of the final decree of adoption gives the natural father an absolute veto over the adoption proceeding, regardless whether it is exercised in good faith rather than for vindictive reasons, is answered in part by reference to the provisions of AS 20.15.050(a). That statute allows for dispensing with the consent of a parent under a number of defined circumstances, including failure of the parent to communicate meaningfully with the child or to provide care and support as required by law for a period of one year prior to the adoption. The legislature could have assumed quite reason-

ably that the provisions of AS 20.15.050(a), as set out in note 4 *supra*, adequately protect the child's interests in the pending adoption vis a vis the objecting natural father. This interpretation of the relevant statutes precludes additional consideration of the best interests of the child in determining whether a father may legitimate the adoptee during the pendency of the proceeding and so foreclose adoption absent his consent. See also note 14, *infra*.

This holding also has made it unnecessary to address the effect of the master's additional determination that sufficient evidence was adduced to show that Psenak was the child's father under AS 25.20.050(a)(3).

13. See note 4 *supra*.

14. Appellants contend that the probate master did not consider the best interests of the child. They argue that since Psenak had not sought custody of L. A. H., it is in her best interest to become a legal member of the family unit with whom she lives. We note that AS 20.15.120(c) requires the superior court to determine that the required consents have been obtained or excused *and* that the adoption is in the best interests of the child. Both of the conditions must be met.

AS 20.15.120(c) provides:

If at the conclusion of the hearing the court determines that the required consents have been obtained or excused and that the adoption is in the best interest of the person to be adopted, it may issue a final decree of adoption.

We think these provisions are dispositive of appellants' contention that the required consent of the child's father may be dispensed with if it is in the best interests of the child to do so.

15. The United States Supreme Court, in *Quilloin v. Walcott*, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), recognized the validity of these policy considerations in upholding the Georgia Supreme Court's conclusion that denial of legitimation by the natural father and granting of a petition for adoption by the mother's husband of eleven years standing was in the best interests of the child. In rejecting the father's equal protection claims, the Court held that:

theless, it is our view that appropriate resolution of the competing interests involved lies in the legislative forum rather than with this tribunal.

Affirmed.

[T]he result of the adoption in this case is to give full recognition to a family unit already in existence, a result desired by all concerned, except appellant. Whatever might be required in other situations, we cannot say that that the State was required in this situation to find anything more than that the adoption, and denial of legitimation, was in the 'best interests of the child.'

*Id.* at 255, 98 S.Ct. at 555, 54 L.Ed.2d at 520.

The statutory scheme in the *Quilloin* decision is readily distinguishable from that in the base at bar, however. The Georgia statute involved in *Quilloin*, set out at 434 U.S. at 250, 98 S.Ct. at 552, 54 L.Ed.2d at 516 n. 4, required only the mother's consent for the adoption of an illegitimate child unless the father previously had legitimized the child by securing a court order to that effect. Thus, it was not possible for the natural father in the *Quilloin* case to accomplish legitimation independently during the pendency of the adoption proceeding merely by filing an affidavit as appellee was able to do in this case. Rather, the natural father in *Quilloin* was left to argue deprivation of equal protection grounds for invalidating the adoption since he was not able to rely on a clear statutory provision such as is presented by the Alaska adoption and consent statutes. It was in this context that the Supreme Court in *Quilloin* rejected the father's constitutional contentions.

In addition, we note that the *Quilloin* case presented an especially appealing factual situation in which to apply the Court's decision on the natural father's constitutional claims. Al-

though there appeared to have been intermittent contacts between the child and his natural father over the eleven years of the mother's marriage to her present husband, the child had always lived with his mother and her husband, the natural father had never exercised actual or legal custody over his child, and he had "never shouldered any significant responsibility with respect to the daily supervision, education, protection, or care of the child." *Id.* at 256, 98 S.Ct. at 555, 54 L.Ed.2d at 520. Even under the comprehensive Alaska adoption statute involved in this case, if the contacts between the child and parent are attenuated enough, consent by that parent to the adoption is not required. See AS 20.15.050(a), which is set out in note 4 *supra*. In any event, the contacts between L. A. H. and her natural father were of considerably greater scope than those described in *Quilloin*, according to the master's findings in the trial court on that subject. See note 10 *supra*.

The Supreme Court's decision in the *Quilloin* case upheld the validity of Georgia's statutory adoption scheme as applied in the particular case before the court; there was no intimation in that opinion that other adoption statutes more protective of the natural father's rights in a parent-child relationship would not pass constitutional muster also. In our view, the implications of the policy concerns expressed in *Quilloin* for the merits of retaining the existing statutory adoption scheme in Alaska are more appropriately addressed in the state legislature than by this court.