666 P.2d 1036 (1983)
R.N.T., Natural Father, Appellant,
v.
J.R.G. & M.I.G., Prospective Adoptive Parents, Appellees.
No. 6770.
Supreme Court of Alaska.
July 8, 1983.
*1037 Dick L. Madson, Cowper & Madson, Fairbanks, for appellant.
Rita T. Allee, Fairbanks, for appellees.
Daniel L. Callahan, Fairbanks, guardianad-litem.
Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

OPINION
MATTHEWS, Justice.
R.N.T. appeals a determination by the superior court that he need not consent to the adoption of his two children from a previous marriage. The prospective adoptive parent is J.R.G.J.R.G. is the present husband of M.I.G.M.I.G. is R.N.T.'s former wife and the parent to whom custody of the children was awarded at the time of their divorce.
R.N.T. refused to consent to the adoption by J.R.G. He contends his consent was necessary pursuant to AS 20.15.040(a)(2) (current version at AS 25.23.040(a)(2)). However, J.R.G. argued and the superior court concluded, that R.N.T.'s consent was not required due to the exception contained in AS 20.15.050(a)(2) (current version at AS 25.23.050(a)(2)), which states:
(a) Consent to adoption is not required of
... .
(2) a parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause, including but not limited to indigency,
(A) to communicate meaningfully with the child, or
(B) to provide for the care and support of the child as required by law or judicial decree; ...
The superior court found that R.N.T. had "significantly failed without justifiable cause to communicate meaningfully with the children, and to provide for the care and support of the children as required by law and judicial decree."
R.N.T. contends that this finding was clearly erroneous. He argues that J.R.G. did not bear his burden of proving by clear and convincing evidence that a one year period transpired in which he unjustifiably failed significantly to communicate with or support his children.[1] Thus, he argues, the superior court erred in dispensing with his consent to the adoption.

MEANINGFUL COMMUNICATION
R.N.T. and M.I.G. were divorced in 1975. Despite the divorce the family continued to reside together in Fairbanks until September, 1976, when R.N.T. was transferred by his employer to Anchorage. M.I.G. and the two children remained in Fairbanks upon his transfer, but R.N.T. nonetheless maintained significant contact with his children, traveling to Fairbanks every other weekend to be with them and his former wife. M.I.G. and the two children moved to Anchorage later in 1976, and although separate residences were maintained, it appears that the family was once again united. R.N.T. and M.I.G. considered remarrying and buying a house, and they and the children were together almost every day.
*1038 The family's living arrangements remained substantially the same until late June or early July 1978. At that time trouble developed between R.N.T. and M.I.G. over another man. M.I.G. took the children and moved back to Fairbanks, and except for a family vacation in Utah which failed to resolve the problems between R.N.T. and M.I.G., R.N.T. did not visit with his children again until December 10, 1978. This was the last time that R.N.T. would see his two children. When he refused that evening to give M.I.G. money to use in buying her Christmas presents to the children she became furious. The next day M.I.G. turned over to the police some gold that R.N.T. had stolen in 1975. This evidence led to R.N.T.'s arrest and incarceration from December 20, 1978 until February 26, 1980.
R.N.T. attempted to communicate with his children while he was in prison. He wrote a letter to M.I.G. in March 1979 asking her to allow the children to write to him. M.I.G. took this letter to the District Attorney and told him that R.N.T. was bothering her. As a result, R.N.T.'s lawyer advised him to refrain from writing further letters to M.I.G. or his children.
When he was released from prison, R.N.T. again attempted to communicate with his children. He sought permission from his parole officer to go to Fairbanks to see them.[2] His parole officer informed him that under no circumstances, not even to see his children, was he allowed to go to Fairbanks. The officer further informed R.N.T. that any communication between himself and the children would have to be through a third party. R.N.T. could think of only one person who could arrange such a communication  M.I.G.'s brother. However, the brother told R.N.T. that he had had no contact with M.I.G. and made it clear that he didn't want to become involved. R.N.T. was still living under the conditions of his parole at the time J.R.G. filed a petition for adoption in August 1981.
At the adoption hearing the parties stipulated that there had been no meaningful communication between R.N.T. and his children since December 1978, the time of his incarceration. R.N.T. argued, however, that the failure to communicate over that period was justifiable. He contended that during his incarceration and parole constraints were imposed on him which effectively prevented any contact with his children. Having established the existence of those constraints, he argued that he had borne his burden of producing a justifiable cause for failing to communicate which J.R.G. failed to rebut by clear and convincing evidence. See D.L.J. v. W.D.R., 635 P.2d at 838.
The superior court rejected these arguments. It concluded that R.N.T.'s incarceration and parole could not be used as a justification since they were both attributable solely to R.N.T.'s own conduct in committing the 1975 crime. Thus, the court determined that R.N.T. had failed to meet his initial burden of producing evidence of a justifiable cause for failing to communicate. This was error.
Appellees seek to uphold the judgment below on factual grounds, arguing that R.N.T. could have communicated meaningfully while in jail and on probation, but did not try. They do not defend the legal proposition that the prevention of communication by incarceration may not be justifiable cause under the statute. We reject appellee's factually based contention. We also reject the legal proposition that inability to communicate caused by incarceration may not be justifiable cause.
It is quite generally held that parental conduct which causes loss of a parent's right to consent to adoption must be wilful. "Particular conduct brought on by force of circumstances, necessity, or misfortune does not ordinarily come within the statute." 2 C.J.S., Adoption of Persons § 61, at 483 (1972) (footnote omitted); see also In Re Adoption of A.J.N., 525 P.2d 520, 523 (Alaska 1974) ("conscious disregard of [parent's] *1039 obligations" required). The commentary to the Uniform Adoption Act, on which AS 20.15.040(a)(2) was modeled, makes it clear that the wilfulness requirement was intended to be continued in the Uniform Act. Uniform Adoption Act § 6 commissioner's note, 9 U.L.A. 27 (1979) (communication and support required "when the parent is able to do so.").
Those authorities which have considered the question have generally held that neglect of parental duties caused by imprisonment is not necessarily wilful and thus does not inevitably result in the loss of a parent's right to consent. Harden v. Thomas, 329 So.2d 389, 390-91 (Fla.App. 1976); Murphy v. Vanderver, 169 Ind. App. 528, 349 N.E.2d 202, 203 (1976); In re Adoption of Riggs, 10 Misc.2d 617, 175 N.Y.S.2d 388, 389-90 (N.Y.Cty.Ct. 1958); Elliott v. Maddox, 510 S.W.2d 105, 107 (Tex.Civ. App. 1974); In re Adoption of Jameson, 20 Utah 2d 53, 432 P.2d 881, 882 (1967); see State v. Grady, 231 Or. 65, 371 P.2d 68, 69-70 (1962); cf. Nada A. v. State, 660 P.2d 436, 439 (Alaska 1983) (impliedly holding that incarceration is not wilful conduct necessary to constitute abandonment.) Of course, imprisonment does not necessarily preclude a parent from communicating with his children. Where it does, however, the failure to communicate is properly considered non-wilful and thus justifiable cause. See Peyla v. Martin, 40 Ill. App.3d 373, 352 N.E.2d 407, 410-11 (1976) (admonition of parole officer not to pursue visitation and refusal to grant travel permits to parolee were factors that precluded finding of failing to maintain a reasonable degree of interest in child); In re Adoption of Herman, 406 N.E.2d 277, 280 (Ind. App. 1980) ("Thus, it must be determined whether [the parent], though incarcerated, still maintained the ability to communicate with the minor child.").
The circumstances of R.N.T.'s incarceration and parole clearly prohibited him from communicating with his children. To deny that these circumstances may act as a justification misreads former AS 20.15.050. In Matter of Adoption of K.M.M., 611 P.2d 84, 87-88 (Alaska 1980) we determined that this statute must be strictly construed in favor of the natural parent. There we found justification in the mere fact that it was emotionally traumatic for the natural father to see his children and former wife living with a man who had been the father's closest friend. Here the evidence of justifiable cause is much more substantial. R.N.T. was effectively prevented by the circumstances of his incarceration and parole from establishing meaningful communication with his children.

CARE AND SUPPORT
The superior court also found that R.N.T. had failed significantly and without justification to provide for the care and support of his children since the time of the divorce. By statute, such failure over a one year period is an alternative ground for dispensing with a natural parent's consent to an adoption. Thus, we must review this finding as well.
By the terms of the divorce decree, R.N.T. was required to pay $100.00 per child per month as child support to M.I.G.R.N.T. admitted that he had not complied with that order.[3] However, R.N.T. repeatedly testified that from the time of the divorce until June or July, 1978 he was informally giving money to M.I.G. to help support the children, and that he was himself taking care of them. J.R.G. did not rebut this testimony at the adoption hearing.
In December, 1978 R.N.T. was arrested and incarcerated. At the adoption hearing he claimed to have been indigent since that time. Former AS 20.15.050(a)(2) specifically *1040 states that indigency is a justifiable cause for failing to provide for care and support. Again, J.R.G. offered no proof rebutting R.N.T.'s contentions.
While it is clear that R.N.T. has not formally complied with the judicial decree ordering him to pay child support, that failure does not necessarily place him within the exception of former AS 20.15.050(a)(2)(B). See D.L.J. v. W.D.R., 635 P.2d at 839; Matter of Adoption of K.M.M., 611 P.2d at 85-87. The statute requires that he significantly fail to provide for care and support, and any such failure must be unjustified. The prospective adoptive parent has the ultimate burden of proving these points by clear and convincing evidence. D.L.J. v. W.D.R., 635 P.2d at 838.
On the present state of the record we are left to speculate whether the amount of care and support that R.N.T. provided before his arrest was minimal or substantial, since J.R.G. presented no evidence in this regard. The record reveals only that some amount of care and support was in fact provided by R.N.T. Likewise, for the period of time after R.N.T.'s arrest we have before us only his assertion that he was indigent. J.R.G. has not proven by clear and convincing evidence that an entire year passed in which R.N.T. failed significantly and without justification to provide for the care and support of his children. The superior court's finding to the contrary is clearly erroneous.
The decree of adoption of the superior court is REVERSED.
CONNOR, J., not participating.
COMPTON, Justice, dissenting.
In my view, the trial court's finding that R.N.T. failed significantly without justifiable cause to communicate meaningfully with his children is not clearly erroneous. I accordingly believe the judgment should be affirmed.
As this court notes, R.N.T. "contended that during his incarceration and parole[,] constraints were imposed on him which effectively prevented any contact with his children. Having established the existence of those constraints, he argued that he had borne his burden of producing a justifiable cause for failing to communicate... ." 666 P.2d at 1038. Using an abbreviated analysis, this court uncritically accepts R.N.T.'s argument and summarily rejects the trial court's conclusion that it is without merit. When R.N.T.'s argument is subjected to full analysis, however, its insufficiencies become apparent.
The analysis used by this court is as follows: (1) parental conduct resulting in the loss of the right to consent to an adoption must be wilful; (2) neglect of parental duties caused by imprisonment is not necessarily wilful and thus does not inevitably result in the loss of a parent's right to consent; (3) imprisonment does not necessarily preclude a parent from communicating with his or her children; and (4) where it does, however, the failure to communicate is properly considered non-wilful and thus justifiable cause. I do not dispute the first three steps in this analysis. I do take issue, however, with the fourth.
The authorities cited by this court properly stand for the proposition that a parent's imprisonment is basically a neutral factor in determining whether that parent's consent is necessary for the adoption of his or her child by a third party. Under Alaska's statute, a parent's imprisonment cannot be used ipso facto to hold as a matter of law that the parent's consent is not necessary; on the other hand, however, the imprisonment also cannot be used ipso facto to hold as a matter of law that the parent was justified in not communicating with or supporting his or her children during the course of the imprisonment. See Annot., 78 A.L.R.3d 712 (1977). This is because imprisonment does not inherently and necessarily preclude a parent from continuing to communicate with and support his or her children.
R.N.T. states that the terms of his imprisonment and parole effectively prevented him from having any contact with his children. This should not be the end of the analysis, as it is for this court, but only the beginning. Not all parents who are incarcerated *1041 or on parole are precluded from communicating with their children; it simply is not an automatic condition of imprisonment or parole. The issue that must be addressed is whether the constraints imposed on R.N.T. were the result of his own conduct, in which case his failure to communicate would not be justifiable, or were instead the result of circumstances over which he had no control.
Constraints on a parent's ability to communicate with his or her children may be the result of either that parent's own conduct or the result of circumstances beyond his or her control, as the following possibilities illustrate. At one extreme, imagine a parent who was one of the unfortunate hostages in Iran or was a POW in Viet Nam. These persons were obviously unable to communicate with their children for a substantial period of time because of circumstances beyond their control. There would be no doubt that their failure to communicate was justifiable. At the other extreme, however, imagine a parent who has been specifically ordered by a court not to communicate with his or her children because of past incidents of violence or other forms of abuse. The constraints placed upon this parent are the direct result of his or her own conduct. If the restraining order were in effect for a year or more, this parent's consent to the adoption of his or her children would not be necessary. It would be ludicrous to permit this parent to argue that his or her failure to communicate was justified because he or she was required to comply with the court order precluding such communication. The underlying fact would remain that the restraints imposed by "outside forces" were the direct result of the parent's wilful conduct.
The superior court concluded that R.N.T. did not meet his initial burden of producing evidence that his failure to communicate with the children was justifiable. I would agree. R.N.T. merely stated that the circumstances of his incarceration and parole prohibited him from communicating with his children. This was insufficient. It was incumbent upon R.N.T. to also produce evidence that these constraints were the result of circumstances beyond his control. In view of his failure to produce such evidence, the superior court did not err in concluding that his consent to the adoptions was unnecessary.
The record before this court indicates that the constraints imposed upon R.N.T. were the result of his own conduct. In a report filed with the trial court, which was not objected to, the guardian ad litem for the children stated as follows:
Apparently both before and after their separation, the relationship of [R.N.T.] and [M.I.G.] was relatively unstable and there were several incidents of violence including at least one that resulted in the hospitalization of [M.I.G.] and which have led to a medical condition which still exists. Both children have memories of violence and abusive language and treatment from [R.N.T.]. Following the separation both children for some period of time attended counseling sessions with either Dr. Rothrock or Dr. Roland of Fairbanks Community Mental Health.
These circumstances, which were within R.N.T.'s control, would justify restricting R.N.T.'s freedom to communicate with his children.
R.N.T.'s children have filed consents to the adoption by J.R.G.[1] According to the guardian ad litem, "[b]oth children stated individually and freely that they wished to be adopted by the petitioner." It is true, as noted by this court, that we held in In re K.M.M., 611 P.2d 84, 87-88 (Alaska 1980), that the adoption statutes must be strictly construed in favor of the natural parent. We did not, however, judicially abrogate the provision by which the consent of a parent is not required if the parent has failed significantly without justifiable cause *1042 to communicate meaningfully with the children.[2] This court concludes that anytime a parent is precluded from communicating with his or her children, whether or not the constraints are a result of the parent's own conduct, "the failure to communicate is properly considered non-wilful and thus justifiable cause." 666 P.2d at 1039. Such a result can frequently reward the guilty and punish the innocent. This is certainly not mandated by Alaska's statutes.
I would affirm the judgment of the superior court.
NOTES
[1] In D.L.J. v. W.D.R., 635 P.2d 834, 838 (Alaska 1981), we held that the natural parent has the initial burden of producing evidence of a justifiable cause for failing to communicate or provide support. Once this burden is met, the burden of proving by clear and convincing evidence that the natural parents' omissions were not justified rests with the adoptive parent. Id.
[2] Such permission was necessary because one of the conditions of R.N.T.'s parole required him to remain within a fifty mile radius of his residence.
[3] He explained that, until June or July, 1978, he and M.I.G. and the children were largely still living together as they had before the divorce, and because they had adequate financial resources the subject of the child support order never arose. In Matter of Adoption of K.M.M., 611 P.2d at 86, we found it significant that the custodial parent had not demanded compliance with a child support order.
[1] AS 20.15.040(a)(5) required consent from minors more than 10 years of age, unless dispensed with by the court. This consent is now required by AS 25.23.040(a)(5). At the time that the Petition For Adoption was filed, R.I.T. was 12 years of age and L.N.T. was 11 years of age.
[2] In In re K.M.M., this court did not excuse a failure to communicate. Rather, under the circumstances of the case, we held that there in fact had been meaningful communication. 611 P.2d at 88.