727 P.2d 768 (1986)
D.A. and L.A., Appellants,
v.
D.R.L., Appellee.
No. S-976.
Supreme Court of Alaska.
November 7, 1986.
Rehearing Denied December 5, 1986.
Allen M. Bailey and Wayne Ross, Ross & Gingras, P.C., Anchorage, for appellants.
Mikel R. Miller, Anchorage, for appellee.
Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION
RABINOWITZ, Chief Justice.

I. Background.

D.A. brings this appeal from the superior court's denial of his petition to adopt L.R.A. In his petition D.A. alleged that L.R.A.'s natural father failed significantly without justifiable cause to meaningfully communicate with her for a period of over one year, thereby obviating the necessity of obtaining the natural father's consent *769 to the adoption.[1] The child's natural father, D.R.L., failed to appear at the first scheduled hearing on the adoption petition. At that time, Judge Gonzales ruled that notice to the natural father of the filing of the adoption petition and of the time and place of hearing was inadequate to meet the provisions of AS 25.23.100. The adoption hearing was continued until the natural father could be served with adequate notice. Subsequently, a second hearing was held before Judge Cutler.[2]
D.R.L. and L.A. were married in December 1980 and L.R.A. was born in June 1981. The couple separated in September 1982, and were divorced on December 20, 1982. D.R.L. visited his daughter twice in the three-month period between the separation and the divorce. In the months following the divorce, D.R.L. visited his daughter about once a month until his former wife married D.A. in October 1983. From October 1983 until July 1984, except for February through April when the new family vacationed in Arizona, D.R.L. telephoned L.A. approximately once a month to inquire about L.R.A. or to arrange visits to see her  none of which he carried out. From July through November 1984, D.R.L. did not contact L.A. In November 1984, D.A. filed the subject petition to adopt L.R.A.
D.A. testified that during his marriage to L.A., D.R.L. had sent no Christmas or birthday cards to L.R.A. On cross-examination L.A. revealed that D.R.L. had requested and been refused several visits with L.R.A.L.A. testified that the reason for these refusals was that she was uncomfortable being alone with her former husband and that D.A. (her present husband) was not at home when D.R.L. requested the visits.
At the conclusion of the cross-examination of D.A. the superior court asked the natural father's counsel if he wished to have D.R.L. testify. D.R.L.'s counsel declined to present any evidence, instead moving for a directed verdict. This motion was based on two grounds. First, for three months of the one year and two weeks that had elapsed between D.R.L.'s last visit with L.R.A. and the filing of the petition for adoption, the new family had been in Arizona. Second, the petitioners failed to show by clear and convincing evidence that there was no justifiable cause for the natural father's failure to meaningfully communicate with L.R.A.
The superior court granted the motion and dismissed the petition for adoption. It held that petitioners had not shown that the natural father's failure to communicate was without justifiable cause, for several reasons. First, the court considered the fact that D.A. and L.A. took the child to Arizona for three months of the year, and found that this absence made it less reasonable for the natural father to exercise his visitation rights. Second, it considered the fact that L.R.A. was only between two and three years old during the year in question, an age which made meaningful communication through phone calls or letters difficult. Third, it considered the fact that during 1983, the natural father had seen L.R.A. almost every month. Finally, the court considered the youth of the divorced natural parents, and its effect on the difficult *770 situation of the natural father visiting L.R.A. in the presence of his ex-wife and her new husband.
Petitioners' subsequent motion for reconsideration was denied, and this appeal followed.

II. Superior Court's Denial of The Petition for Adoption.

Appellants contend that the superior court erred in denying their petition for adoption. We conclude that the superior court's decision should be affirmed.
As indicated above, Alaska's forfeiture of consent statute provides in part that consent to adoption is not required of a noncustodial parent if that parent for a period of at least one year has failed significantly without justifiable cause to communicate meaningfully with the child.[3] In past decisions this court has strictly construed these statutory consent provisions, in order to protect the rights of the natural parent. S.M.K. v. R.G.G., 702 P.2d 620, 623 (Alaska 1985); R.N.T. v. J.R.G., 666 P.2d 1036, 1040 (Alaska 1983); D.L.J. v. W.D.R., 635 P.2d 834, 837 (Alaska 1981); Matter of Adoption of K.M.M., 611 P.2d 84, 87-88 (Alaska 1980). We also have read the term "meaningful communication" broadly. See K.M.M., 611 P.2d at 88. Contra In re: J.J.J., 718 P.2d 948 (Alaska 1986). Thus, in circumstances where the child is too young to read or communicate over the telephone, we have relaxed the requirement of meaningful communication under the "without justifiable cause" language of AS 25.23.050(a)(2)(A). S.M.K., 702 P.2d at 624.[4]
Considering that petitioners had the burden of proving by clear and convincing evidence that the natural father failed to communicate meaningfully without justifiable cause for a period of one year, we hold that the superior court's findings of fact, which were basic to its conclusion that the petition should be denied, are not clearly erroneous.[5] In other words, we conclude that there is an adequate evidentiary basis for the superior court's findings relating to the issue of the natural father's justification for failing to communicate with his child. In this regard, we hold that the following controlling findings of fact were not clearly erroneous: the superior court's finding that the natural father's failure to communicate was justified since the child was too young to talk on the telephone or understand gifts or letters from her father;[6] the natural mother's postponement of certain requested visitations and the natural father's emotional difficulty in visiting with the new family justified his failure to communicate with the child;[7] and the new family's absence from Alaska for three months during the critical year period made it less reasonable for the natural father to exercise his visitation right.[8]
*771 The superior court's dismissal of the petition for adoption is AFFIRMED.[9]
BURKE, Justice, concurring.
The superior court's order of dismissal was apparently entered without regard for the procedural requirements of Civil Rule 41(b). King v. Alaska State Housing Authority, 512 P.2d 887 (Alaska 1973). Appellant, however, fails to appeal on this ground. Thus, I concur.
MOORE, Justice, dissenting.
I would reverse and remand this case for two reasons. First, the trial court ordered dismissal of the adoption petition without regard for the procedural requirements of Rule 41(b), Alaska R.Civ.P. The plurality opinion does not address this procedural error. Second, the trial court did not apply the correct decisional law regarding what constitutes justifiable cause for noncommunication. The plurality glosses over this error by ignoring our decision in In re J.J.J., 718 P.2d 948 (Alaska 1986). The plurality's suggestion that D.L.'s failure to communicate was justified by the emotional difficulty of visiting his child in the home of his ex-wife and her new husband is diametrically opposed to our holding in J.J.J., Id. at 953. Furthermore, I cannot agree with the plurality's inference that a child's absence from the state automatically tolls the one-year statutory period.

I.
After L.A. and her husband had testified, the trial court asked the natural father's counsel if he wished to have D.L. testify. D.L.'s counsel did not, as the plurality states, "decline to present any evidence." Rather, counsel did not answer the court's question but instead moved for a "directed verdict." Since this was a non-jury proceeding and the petitioner had completed his case in chief, counsel's motion should have been termed one for involuntary dismissal under Civil Rule 41(b).[1]
The trial court erred in granting the motion and dismissing the petition for adoption. Our decisions under Civil Rule 41(b) hold that the motion should be denied if the petitioner has made out a prima facie case based on unimpeached evidence. King v. Alaska State Housing Authority, 512 P.2d 887, 890 (Alaska 1973); Trusty v. Jones, 369 P.2d 420, 422 (Alaska 1962); Rogge v. Weaver, 368 P.2d 810, 813 (Alaska 1962). The trial court is to view petitioner's evidence in its most favorable light. King, 512 P.2d at 890. Where the petitioner has presented a prima facie case, the trial court should not grant the motion even though it, as the trier of fact, may think the petitioner has not, at that point, sustained his ultimate burden of proof.[2]Rogge, 368 P.2d at 813.
In an adoption case based on AS 25.23.050(a)(2)(A), the petitioner only need show *772 that the natural parent failed significantly to meaningfully communicate with his or her child for a period of over one year to avoid an involuntary dismissal. The natural parent then must come forward with evidence of a justifiable cause for such omissions. S.M.K. v. R.G.G., 702 P.2d 620, 624 n. 11 (Alaska 1985), citing D.L.J. v. W.D.R., 635 P.2d 834, 838 (Alaska 1981). Thereafter, the adoptive parent must prove by clear and convincing evidence that the natural parent's omissions were not justified. Id. Even if the evidence establishes that the failure to communicate was not justified and the natural parent's consent to adoption is therefore unnecessary, the court still may decline to order an adoption if it would not be in the child's best interests.[3] The trial court, however, did not reach this issue because it found that justifiable cause existed for D.L.'s failure to communicate. See J.J.J., 718 P.2d at 956; D.L.J., 635 P.2d at 838; In re L.A.H., 597 P.2d 513, 517 n. 14 (Alaska 1979).
Here, viewing the uncontested evidence in the light most favorable to the petitioners, a prima facie case clearly was made out that D.L. had failed significantly to meaningfully communicate with L.R.A. for a period in excess of one year. The adoption petition was filed November 15, 1984. During the trial held in March 1985 petitioners testified that D.L.'s last physical contact with his daughter was on October 29, 1983. Since that date he had not visited L.R.A., talked with her on the telephone or sent any birthday or Christmas cards. The time from October 29, 1983 to November 15, 1984 was a period of one year and two weeks.
Because the trial court's role in deciding the Rule 41(b) motion was limited to determining whether petitioners had presented evidence sufficient to establish a prima facie case of noncommunication, the court erred in granting a dismissal. The case should be remanded for the purpose of completing the trial or, if necessary, for a new trial. See Trusty, 369 P.2d at 422.

II.
Notwithstanding the procedural error, a remand is necessary in any event because the trial court did not apply the correct decisional law. The court held that petitioners had not shown that D.L.'s failure to communicate was without justifiable cause, citing several reasons. The reasons included: the child's absence from the state for three months of the year, which made it less reasonable for the natural father to exercise his visitation rights; the child's young age, which made meaningful communication through phone calls or letters difficult; and the emotionally difficult situation of D.L. visiting his child in the home of his ex-wife and her new husband.
The plurality affirms these findings as not clearly erroneous and holds that petitioners did not prove that the natural father failed to meaningfully communicate without justifiable cause for a period of one year. Maj.Op. at 770. In so holding, the plurality flatly contradicts controlling decisional law. In J.J.J. we specifically stated that
in order for a noncustodial parent to block a stepparent adoption, he or she must have maintained meaningful contact with a child, ... unless prevented from doing so by circumstances beyond the noncustodial parent's control. Circumstances resulting from the noncustodial parent's own conduct cannot excuse such a parent's significant failure to provide support or maintain meaningful communication. Moreover, failure to support or to maintain contact with a child should not be excused by the emotional antagonism or awkwardness that may exist between former spouses.

J.J.J., 718 P.2d at 953 (emphasis added in last sentence).
*773 We recognize the emotional trauma that may be involved when a noncustodial parent visits a child in the home of a former spouse who has remarried. However, there are ways to avoid this situation, such as visitation in a neutral setting. A child's need for parental contact is simply too important to justify a parent's failure to meaningfully communicate for this reason. Under our case law, the trial court clearly erred in considering this factor as justification for D.L.'s noncommunication.
I also am troubled by the plurality's treatment of the issue of the child's absence from the state. To the extent that the plurality infers that such an absence could automatically toll the one-year statutory period, I strongly disagree. If the statute is tolled automatically when a custodial parent takes a child from the state, a stepparent in many instances could never adopt a stepchild even though the noncustodial natural parent remaining in Alaska had essentially forgotten about the child.
A court could, however, properly consider a child's absence from the state when determining whether there was justification for a parent's noncommunication. If the custodial parent concealed the child's location or otherwise affirmatively hindered visitation, or the noncustodial parent lacked the financial ability to travel to visit his or her child, these factors could properly be considered when deciding the justification issue.
Here, the record is silent as to whether D.L. knew his daughter's address in Arizona, whether he had inquired, or whether the information had been withheld. Therefore, the proper disposition of this case would be to remand with instructions for the court to consider such factors when deciding whether D.L.'s failure to communicate was justified.
COMPTON, Justice, dissenting.
I concur with the remarks made by Justice Moore. However, I believe one matter warrants further discussion.
Most of the plurality opinion can be explained by its refusal to accept the holding in In the Matter of J.J.J., 718 P.2d 948 (Alaska 1986). Less explicable and very troubling is its apparent acknowledgement that L.R.A.'s brief absence from the state constitutes justifiable cause for D.R.L.'s failure to communicate meaningfully with her.
L.R.A. was between two years eight months and two years ten months of age when she was visiting in Arizona. While we would all agree that it is a very rare child who can read at that age, it is equally obvious that such a child can talk on the telephone, for instance. Of course, if D.R.L. does not call L.R.A., her capability in that regard is of no consequence. There is no suggestion that D.R.L. did not know where his daughter was during her absence from the state. It appears uncontested that there was no communication between them during this period. There is no evidence that D.R.L. even tried to communicate with her during this period. Further, the opinion merely notes that the family's absence from Alaska made it "less reasonable for the natural father to exercise his visitation right." Maj.Op. at 770. Yet nothing in our statutes or decisional law equates exercise of visitation rights with meaningful communication.
Stripped of its trappings, the critical factor that leads to the result here is the mere absence of L.R.A. from the state. This is new law. No authority is cited to support it. No reasoning is advanced to justify it.
This court should not adopt a rule that mere absence from the state tolls in some manner the one year period, and thus excuses a non-custodial parent's failure to communicate meaningfully with his or her child. If by leaving the state for whatever benign reason the period is tolled, a stepparent may never be able to adopt a stepchild, even though for all intents and purposes the non-custodial parent has forgotten about the child. Stepparents who move from the state are in jeopardy of losing the opportunity to adopt a stepchild for years. Those who leave only for a vacation will be *774 in a quandary whether a trial court will toll the time they are "outside." And if the non-custodial parent must move elsewhere, that will make it "less reasonable for the natural father to exercise his visitation rights." Presumably tolling will result.
Since the absence from the state in this case was only temporary, and no malignant motive is remotely suggested, it should be sufficient to say that the absence does not toll any part of the one year period. D.R.L. did nothing to communicate with L.R.A. during her absence. He should not be able to argue an advantage because of it.
NOTES
[1] AS 25.23.050(a)(2)(A) provides that:

Consent to adoption is not required of ... (2) a parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause ... (A) to communicate meaningfully with the child... .
[2] Appellants claim that notice of the first adoption hearing was adequate, and that they were deprived of their right to present their case before Judge Gonzales. Although this specification of error has been rendered moot, we note that adequacy of notice is controlled by AS 25.23.100(b), which calls for the giving of notice "in the manner appropriate under rules of civil procedure for the service of process in a civil action... ." Alaska R.Civ.P. 4(h) allows for service of process by certified mail, as was done here, but requires that, "[p]roof of service shall be made by affidavit forthwith." Since there was no affidavit of service before the court, Judge Gonzales ruled correctly in continuing the first adoption hearing. A return receipt is generally not adequate in the absence of an affidavit attesting to the fact that the mail which was delivered contained the required documents.
[3] For the text of AS 25.23.050(a)(2)(A) see note 1, supra.
[4] See also R.N.T., 666 P.2d at 1039; D.L.J., 635 P.2d at 840.
[5] See S.M.K., 702 P.2d 620; R.N.T., 666 P.2d 1036; D.L.J., 635 P.2d 834. In S.M.K., 702 P.2d at 624 n. 11, we said in part:

This court has developed the following heightened burden of proof for the consent exceptions:
[T]he adoptive parent has the burden of proving by clear and convincing evidence that the natural parent failed significantly to communicate with ... the child. Because only the natural parent could explain why he or she failed to communicate with or to provide support for the child, fairness requires that he or she then bear the burden of coming forward with evidence of justifiable cause for such omissions before justification becomes an issue... . Thereafter, the burden of proving by clear and convincing evidence that the natural parent's omissions were not justified rests with the adoptive parent. On review, we will subject the findings to the clearly erroneous test generally used for review of questions of fact.
[citations omitted].
[6] S.M.K., 702 P.2d at 625; D.L.J., 635 P.2d at 839.
[7] See K.M.M., 611 P.2d at 88 (finding emotional trauma of natural father who saw ex-wife living with former best friend to be justifiable cause for failure to visit children).
[8] A failure to communicate must be willful and take place during a period when the parent is able to communicate with the child. S.M.K., 702 P.2d at 624; R.N.T., 666 P.2d at 1039.
[9] Inherent in this disposition is our rejection of petitioners' claim that they didn't have the opportunity to develop an adequate record before the superior court. The petitioners called only two witnesses. Nothing in the record shows that they desired to call, or were deprived of the opportunity of calling the natural father as a witness. In the context of this record we think Civil Rule 41(b) is inapplicable. For here it is clear that the parties submitted the entire case to the superior court for its determination.

Also inherent in our disposition is the conclusion that the natural father could rely on the evidence adduced in petitioners' case in chief to satisfy his burden of coming forward with evidence of justifiable cause for his failure to communicate. Here the direct and cross-examination of the natural mother and step-father furnished the evidentiary basis for the natural father's satisfaction of his burden of proof.
[1] Alaska R.Civ.P. 41(b) provides in part:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.
[2] We have adopted this approach because we believe it is more likely to achieve justice than is an interpretation of Civil Rule 41(b) which permits the trial court to dismiss a close case before the court has heard both sides and has thorough knowledge of the controversy. Trusty, 369 P.2d at 422.
[3] AS 25.23.120(c) provides:

If at the conclusion of the hearing the court determines that the required consents have been obtained or excused and that the adoption is in the best interest of the person to be adopted, it may issue a final decree of adoption.
(Emphasis added.)