**In the Matter of K.L.J., a minor child.**

**No. 3704.**

Supreme Court of Alaska.

June 14, 1991.

Kenneth W. Legacki, Anchorage, for appellant.

Kathleen C. Barron, Wasilla, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

## I. INTRODUCTION

William Edgar Johnson wanted to adopt "K.L.J.," the daughter of his wife, Hei Suk Johnson (formerly Miller). The girl's biological father, Ronald Miller, sought to contest the termination of his parental rights, yet indigency prevented him from hiring an attorney to represent him. The superior court denied Ronald's request to appoint an attorney. The superior court then entered a decree under which William adopted K.L.J. and Ronald was divested of parental rights. Ronald appeals, contending that the denial of his request for court appointed counsel violated procedural due process. We reverse.

## II. FACTS AND PROCEEDINGS

K.L.J. was born December 10, 1978 to Hei Suk and Ronald Miller. Hei Suk and Ronald separated in 1981 and divorced in 1983. Hei Suk was awarded custody and Ronald was awarded visitation. The divorce decree provided that neither party was to remove K.L.J. from Washington State.

Hei Suk lived in Seattle, Washington from the time of her separation until August 9, 1985, when she moved to Alaska. Ronald visited K.L.J. every other weekend in 1981, 1982, and part of 1983. Ronald also paid child support until 1983. Since February 1983, Ronald has not seen or had contact with K.L.J. After Hei Suk and K.L.J. moved, Ronald wrote to K.L.J. However, his letters were returned as no forwarding address was on file. Ronald testified that he did not know where his daughter was from 1983 forward.

Ronald stopped voluntarily supporting K.L.J. in 1983. His support arrearages at the time of trial totalled $11,371. Ronald testified that his hospitalization and indigency prevented him from paying support. In 1982, Ronald had suffered a serious on-the-job injury while working as an airline cockpit mechanic for Boeing Corporation in Washington. He suffered chemical poisoning and fell from a scaffold, injuring his head and spine. He was hospitalized in 1982, 1984, 1985, and 1986, at times in intensive care, as a result of the injuries.

Ronald's sole current income is federal Social Security Disability at $593 per month. Since 1982, the State of Washington has been deducting child support automatically. It currently garnishes 50% of these benefits for past due child support, leaving Ronald less than $300 per month on which to live, $200 of which goes toward his rent. A week before trial, Ronald sent a check directly to Hei Suk for $296.50.

Hei Suk remarried on August 2, 1985 to William Johnson. K.L.J. has lived with Hei Suk and William in Alaska since their marriage. On April 3, 1989, William filed a petition with the superior court to adopt K.L.J. Ronald was notified of the impending adoption and expressly refused to consent. Hei Suk sought to obviate the need to obtain Ronald's consent under AS 25.23.050(a)(2), which states,

**Persons as to whom consent and notice not required.** (a) Consent to adoption is not required of ...

(2) a parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause, including but not limited to indigency,

(A) to communicate meaningfully with the child, or

(B) to provide for the care and support of the child as required by law or judicial decree; ....

Ronald attempted to obtain counsel to oppose Hei Suk's motion to terminate his right to consent under AS 25.23.050. Ronald's legal services attorney in Washington was unsuccessful in finding him counsel in Alaska. Ronald himself was unsuccessful in his own attempts. Given his indigency and his inability to obtain an attorney, Ronald requested that the court appoint an attorney to represent him. The day before the hearing on the motion to waive Ronald's consent, counsel for Hei Suk filed a supplemental memorandum indicating her belief that Ronald was entitled to court appointed counsel.

At the hearing on the merits, the superior court denied Ronald's request for appointed counsel. The superior court ruled that it had no authority to appoint an attorney to an indigent in an adoption unless the other side was represented by a state agency. While Ronald's indigency prevented him from travelling to Alaska, he did make a pro se appearance by telephone. Numerous times throughout the hearing Ronald expressed his frustration over the fact that he did not know how to proceed. The superior court agreed that having the assistance of an attorney would have been helpful to Ronald.

The superior court granted the motion waiving Ronald's consent under AS 25.23.-050(a)(2)(A) and (B). It found unbelievable Ronald's testimony that he did not know where Hei Suk and K.L.J. lived from 1983 to August 1985, given evidence that Ronald had contacted Hei Suk at her listed address for property settlement arrangements. The superior court believed that Ronald probably discontinued the relationship because a new man entered the picture, and that was an unjustifiable reason for failure to communicate with the child.

The superior court also found Ronald's failure to pay support unjustifiable: "You didn't pay child support because you claim you didn't really know whether [K.L.J.] was alive and you didn't pay child support

because you really couldn't afford it. Neither one of those was justifiable reason." The court was influenced by the fact that Ronald had not come to Alaska from Washington to see his daughter, even though he had learned of the adoption several months before the hearing.

Ronald argues on appeal that "[t]he court erred in not appointing an attorney to represent a disabled, indigent father when his ex-wife's husband petitioned the court to waive the natural father's consent and terminate his parental rights so that the ex-wife's husband could adopt the daughter of the divorced couple." We agree and hold that the Alaska Constitution mandates that the superior court appoint an attorney when an indigent parent's right to consent to an adoption of his or her child may be waived under AS 25.23.050(a).

## III. ANALYSIS

 Our analysis of what procedural process is due begins with article I, section 7, of the Alaska Constitution, which provides in part: "No person shall be deprived of life, liberty, or property, without due process of law." [1] We have repeatedly stated that "[w]hat procedural due process may require under any particular set of circumstances depends on the nature of the governmental function involved and the private interest affected by the governmental action." *Arctic Structures, Inc. v. Wedmore,* 605 P.2d 426, 436 (Alaska 1979); *Keyes v. Humana Hosp. Alaska, Inc.,* 750 P.2d 343, 352 (Alaska 1988). *See also Wickersham v. State, Commercial Fisheries Entry Comm'n,* 680 P.2d 1135, 1144–45 (Alaska 1984); *Aguchak v. Montgomery Ward Co., Inc.,* 520 P.2d 1352, 1357 (Alaska 1974). The due process clause of the Alaska Constitution is "flexible, and the concept should be applied in a manner which is appropriate in the terms of the nature of the proceeding." *Otton v. Zaborac,* 525 P.2d 537, 539 (Alaska 1974) (citing

---

**1.** As the facts are undisputed and only a question of law exists, we must "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987) (citing *Brooks*

*v. Brooks,* 733 P.2d 1044, 1055 (Alaska 1987) (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979))). On questions of law, the standard of review is *de novo. Id.*

*Joint Anti–Facist Refugee Comm. v. McGrath,* 341 U.S. 123, 162, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). *See also Flores v. Flores,* 598 P.2d 893, 895 (Alaska 1979). "The crux of due process is opportunity to be heard and the right to adequately represent one's interests." *Matanuska Maid, Inc. v. State,* 620 P.2d 182, 192 (Alaska 1980) (citing *Hansberry v. Lee,* 311 U.S. 32, 42, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940)); *Keyes,* 750 P.2d at 353.

In Alaska, we have adopted the balancing test from *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), to determine what process is due.

> Identification of the specific dictates of due process generally involves consideration of three distinct factors: the private interest affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail.

*Keyes,* 750 P.2d at 353. *See also City of Homer v. State, Dep't of Natural Resources,* 566 P.2d 1314, 1319 (Alaska 1977) (quoting *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903). Our analysis, therefore, rests on the balancing of these factors.

▇▇▇ The private interest of a parent whose parental rights may be terminated via an adoption petition is of the highest magnitude.[2] The right to direct the upbringing of one's child "is one of the most basic of all civil liberties." *Flores,* 598 P.2d at 895. The United States Supreme Court has called the right to have children "a basic civil right of man," *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942), and noted that custody is a right "far more precious ... than property rights." *May v. Anderson,* 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953). *See also Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Pierce v. Society of the Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). *See generally* McCarthy, *The Confused Constitutional Status and Meaning of Parental Rights,* 22 Ga.L.Rev. 975, 977 (1988). The right to the care, custody, companionship, and control of one's children "undeniably warrants deference and, absent a powerful countervailing interest, protection." *Lassiter v. Department of Social Servs.,* 452 U.S. 18, 27, 101 S.Ct. 2153, 2159–60, 68 L.Ed.2d 640 (1981) (quoting *Stanley v. Illinois,* 405 U.S. at 651, 92 S.Ct. at 1212–13).

Next, we examine the state's interest. First and foremost, the state has an interest in the children. Alaska Statute 25.23.-005 states, "This chapter shall be liberally

---

**2.** "The effect of an adoption is to permanently terminate the legal relationship of parent and child, except when the natural parent is the spouse of the adopting parent." *Delgado v. Fawcett,* 515 P.2d 710, 711 (Alaska 1973). AS 25.23.-130(a)(1) states that the effect of an adoption decree is

> to relieve the natural parents of the adopted person of all parental rights and responsibilities, and ... to terminate all legal relationships between the adopted person and the natural parents and other relatives of the adopted person, so that the adopted person thereafter is a stranger to the former relatives....

While the provision in AS 25.23.050, eliminating the need for consent, is short of an actual adoption, it does terminate a parent's ability to protect his or her parental rights. In fact, AS

25.23.050 more directly impacts on the parental role than the situation in *Flores,* where we held that an indigent was entitled to counsel in a divorce proceeding with a custody determination. There we recognized that a divorce proceeding would not sever all parental rights, but that an award of custody would have those consequences given the petitioner's indigency and the distance between California, where the indigent parent lived, and Alaska. *Flores,* 598 P.2d at 895 n. 8. The California Court of Appeals, facing a similar waiver provision in an adoption proceeding, explained, "This proceeding actually works a double deprivation. First, the parent is stripped of his right to withhold consent to the adoption; then his relationship with his child is terminated against his will." *In re Jay [R.],* 150 Cal.App.3d 251, 197 Cal.Rptr. 672, 678 n. 5 (1983).

construed to the end that the best interests of adopted children are promoted." To this end, the state shares the parent's interest in an accurate and just decision; the interests of both the state and the parent in the availability of appointed counsel coincide here.

> If, as our adversary system presupposes, accurate and just results are most likely to be obtained through the equal contest of opposed interests, the State's interest in the child's welfare may perhaps best be served by a hearing in which both the parent and the State acting for the child are represented by counsel, without whom the contest of interests may become unwholesomely unequal.

*Lassiter,* 452 U.S. at 28, 101 S.Ct. at 2160. Simply,

> The state has no legitimate interest in terminating a parent's relationship with his child if he has not willfully neglected or abandoned that child. Appointment of counsel will make the fact-finding process more accurate, thereby *furthering* the state's interest in terminating the rights of parents who do in fact neglect or abandon their children.

*In re Jay [R.],* 150 Cal.App.3d 251, 197 Cal.Rptr. 672, 681 (1983) (citation omitted, emphasis in original).

The state also has an interest in the rights of the indigent parent. Alaska Statute 25.23.005 states, "Due regard shall be given to the rights of all persons affected by a child's adoption." The state's interest in its citizens receiving a just determination on such a fundamental issue cannot be open to question.[3]

However, the state undoubtedly has a legitimate interest in avoiding the cost of appointed counsel and its consequent lengthening of judicial procedures. Yet, "though the State's pecuniary interest is legitimate, it is hardly significant enough to overcome private interests as important as those here...." *Lassiter,* 452 U.S. at 28, 101 S.Ct. at 2160; *see also Little v. Streater,* 452 U.S. 1, 16, 101 S.Ct. 2202, 2210, 68 L.Ed.2d 627 (1981); *In re Jay [R.],* 197 Cal.Rptr. at 681.

Third, we must determine the risk that a parent will be erroneously deprived of his or her right to the care, custody, companionship and control of his or her child if counsel is not provided. In *Flores,* 598 P.2d at 896, we stated the following:

> Although the legal issues in a given case may not be complex, the crucial determination of what will be best for the child can be an exceedingly difficult one as it requires a delicate process of balancing many complex and competing considerations that are unique to every case. A parent who is without the aid of counsel in marshalling and presenting the arguments in his favor will be at a decided and frequently decisive disadvantage which becomes even more apparent when one considers the emotional nature of child custody disputes, and the fact that all of the principals are likely to be distraught.[4]

Alaska Statute 25.23.050(a)(2) contains legal terminology and significance not obvious on its face. For example, consent to an adoption is not required of a parent if "without justifiable cause" the parent fails "significantly" to communicate meaningfully or provide for the care and support of the child "for a period of at least one year." These terms raise issues best resolved by the skills and training of an attorney, for a phrase like "period of at

---

**3.** As the Supreme Court observed in *Lassiter,* [The Columbia Journal of Law & Social Problems] questioned the New York Family Court judges who preside over parental-termination hearings and found that 72.2% of them agreed that when a parent is unrepresented, it becomes more difficult to conduct a fair hearing (11.1% of the judges disagreed); 66.7% thought it became difficult to develop the facts (22.2% disagreed).

*Lassiter,* 452 U.S. at 29 n. 5, 101 S.Ct. at 2161 n. 5 (citing *Representation in Child Neglect Cases:*

*Are Parents Neglected?,* 4 Colum.J.L. & Soc. Probs. 230 (1968)).

**4.** *See also In re Jay [R.],* 197 Cal.Rptr. at 680 ("An uneducated indigent can easily become overwhelmed by such a proceeding without the assistance of counsel."); *Lassiter,* 452 U.S. at 30, 101 S.Ct. at 2161 ("[T]he ultimate issues with which a termination hearing deals are not always simple, however common place they may be.").

least one year," as explained by the case law, includes time not immediately preceding the filing of the adoption petition. *In re J.J.J.*, 718 P.2d 948, 954 (Alaska 1986). Moreover, the need for the adopting parents to prove lack of justifiable cause by "clear and convincing evidence" has a legal significance not readily ascertainable by a lay person. *In re D.J.A.*, 793 P.2d 1033 (Alaska 1990).

The facts of the case at bar forcefully indicate that Ronald was disadvantaged by not having an attorney. In fact, the superior court found that an attorney would have been helpful to Ronald. The crucial question at the adoption proceeding was whether Ronald's lack of communication and support between 1983 and 1985 were sufficient to terminate his right to consent to his daughter's adoption. Critical to his defense were complex legal questions including AS 25.23.050(a)'s applicability when a father satisfied the statute for the required period of time, but then later tried to reestablish contact with his child. Ronald attempted to revive contact with his daughter by letter. However, the mother, violating the terms of the divorce decree, removed K.L.J. from the state on August 9, 1985. Similarly, crucial to Ronald's defense was the question whether voluntary child support and state income garnishment are different types of support, accorded unequal weight under the statute. Ronald clearly thought state garnishment met his support obligation.[5]

Most importantly, a lawyer would have informed the superior court that indigency is a justifiable cause for failure to support a child. The superior court erred in holding that indigency was not a legitimate justification. Ronald claimed that he did not support his daughter because he did not know if she was alive and because of indigency. While the first reason could justify terminating his right to consent under AS 25.23.050(a), the second reason could not. We held in *R.N.T. v. J.R.G.*, 666 P.2d 1036, 1038 (Alaska 1983), that "parental conduct which causes loss of a parent's right to consent to adoption must be willful." *Id.* at 1038. It cannot result from "circumstances over which he had no control." *In re J.J.J.*, 718 P.2d at 953 (quoting *R.N.T.*, 666 P.2d at 1041 (Compton, J., dissenting)). *See also In re Adoption of A.J.N.*, 525 P.2d 520, 523 (Alaska 1974) ("conscious disregard of [parent's] obligation" required to support finding of abandonment under former AS 20.10.040). The statute itself states that indigency is a justifiable cause for failure to provide care, support, or communicate with the child. *See* AS 25.23.050(a)(2). An attorney would have caught this error. Also, an attorney would have indicated to the superior court that indigency and lack of legal sophistication can contribute "to the appearance of half-heartedness that characterized" the attempts to contact a child. *In re Adoption of B.S.L.*, 779 P.2d 1222, 1225 (Alaska 1989).

Not only did complex legal arguments exist, but Ronald did not know how to present important evidence or cross examine witnesses. For example, Ronald was unable to introduce into evidence a card sent to the Postmaster in Seattle seeking his daughter's address, because he did not properly authenticate the evidence. Ronald also lacked knowledge as to how he could block any of Hei Suk's evidence. When asked by the superior court if he objected to evidence Hei Suk sought to admit, Ronald told the court repeatedly, "I don't want to—I don't know what to say, Your Honor. I'm not gonna say anything. I don't know what—how to approach the court or what." Again he stated, "I don't know what to do, Your Honor. So I'm not gonna say nothing." Ronald concluded his case by telling the court "[A]gain, I do not know how to represent myself, that I hope I—I hope the court gives all consideration."

Ronald, in attempting to be his own lawyer, arguably prejudiced himself in presenting his own testimony. In trying to explain why various letters written to his daughter, yet returned to him, were now unat-

---

5. As Ronald was indigent, his situation may differ from that in *In re J.J.J.*, 718 P.2d 948, 954 n. 19 (Alaska 1986), where we found significant and unjustified non-support even though the child support obligation was partially satisfied by garnishment.

tainable, he struggled to find the correct legal terminology. Our study of the record reveals that in representing himself before the superior court, Ronald resorted to employing words that were contextually inappropriate and at times appeared incoherent. A lawyer would have prepared Ronald to avoid this situation.

Apart from Ronald's legal ignorance, Ronald was personally disadvantaged. He is physically disabled from an injury in 1982, which affected his ability to communicate with the court. Also, his indigency prohibited him from appearing in court. Overall, this case clearly demonstrates the need for appointed counsel.[6]

The superior court reasoned that state involvement was essential to invoking due process.[7] Here, the mother is represented by private counsel. On appeal, Hei Suk argues that this court has distinguished between private actions, such as adoptions and custody proceedings, and state actions for delinquent children and children in need of aid when deciding whether to appoint counsel.

---

**6.** Even if we were not to establish a bright line right to counsel, we would conclude that the facts here are compelling enough by themselves to indicate a violation of Ronald's procedural due process rights. "The minimum procedural guarantees which due process requires depend on the particular circumstances of a case." *McMillan v. Anchorage Community Hosp.*, 646 P.2d 857 (Alaska 1982). This also would be true under the federal constitution where the presumption against appointed counsel may be overcome when "the parent's interests were at their strongest, the State's interest were at their weakest, and the risks of error were at their peak...." *Lassiter v. Department of Social Servs.*, 452 U.S. 18, 31, 101 S.Ct. 2153, 2161–62, 68 L.Ed.2d 640 (1981) (holding that the indigent parent in the circumstances of *Lassiter* did not have a constitutional right to appointed counsel in the parental termination proceeding brought by the state).

However, we reject the case-by-case approach set out by the Supreme Court in *Lassiter.* Rather, our view comports more with the dissent. *See id.* at 35–59, 101 S.Ct. at 2163–66 (Blackmun, J., dissenting). As Justice Blackmun explained, the due process balancing in the abstract favors a bright line rule where "the private interest [is] weighty, the procedure devised by the state fraught with risks of error, and the countervailing governmental interest insubstantial." *Id.* at 48–49, 101 S.Ct. at 2170–71. Moreover, we agree with Justice Blackmun's explanation of the benefits of "procedural norms," *id.* at 50, 101 S.Ct. at 2171–72, and his caution about reviewability of case-by-case decision making. *Id.* We further agree with the following analysis:

First, as Justice Blackmun illustrated, the case-by-case approach adopted by the majority does not lend itself practically to judicial review. The transcript of a termination proceeding alone will not be dispositive of whether an unrepresented indigent was disadvantaged. The transcript will not show whether the indigent litigant had adequate discovery or access to legal resources necessary for constructing a defense. Consequently, the reviewing court must expand its analysis into a "cumbersome and costly," time-consuming investigation of the entire proceeding. Since the case-by-case approach involves a constitutional inquiry, "it necessarily will result in increased federal interference in state proceedings."

....

A case-by-case approach is also time consuming and burdensome on the trial court. Not only must it determine in advance the need for counsel, it must develop pretrial procedures and standards in order to determine properly the need for counsel. There is no guarantee that these standards will produce equitable decisions in every case. Additionally, it will not always be possible for the trial court to predict accurately, in advance of the proceedings, what facts will be disputed, the character of cross-examination, or the testimony of various witnesses. These factors increase the possibility that appointment of counsel will be denied erroneously by the trial court. Because of the procedural delays encountered in litigation of appeals, the parent's rights could be terminated erroneously for an extended period of time. The parent also would be denied the custody of his or her children during this period. An absolute right to counsel would avoid any erroneous denial of appointment of counsel and would eliminate the need for cumbersome and time-consuming standards, while preserving the right to family integrity.

Note, *Lassiter v. Department of Social Services: A New Interest Balancing Test for Indigent Civil Litigants*, 32 Cath.U.L.Rev. 261, 282–83 (1982) (footnotes omitted).

**7.** The superior court also reasoned, "if you were to get a free attorney, the mother of the child, if indigent, also could have a free attorney. And pretty soon, adoptions would always be done basically at state expense." Today we extend the right to counsel to indigent parents *defending* against the termination of their parental rights. We are not addressing the rights of those indigent individuals seeking to adopt, but only those economically disadvantaged parties who are trying to avoid having their parental rights terminated because of adoption.

■ We hold that sufficient state involvement exists here to require court appointed counsel. "[T]his court has consistently avoided any formalistic categorization of proceedings as 'criminal' and 'civil' when determining if strict due process safeguards are required." *Flores*, 598 P.2d at 895. We have held that due process requires providing counsel for defendants in civil contempt proceedings, *Otton v. Zaborac*, 525 P.2d 537 (Alaska 1974), as well as for defendants in paternity suits where the state supplies counsel to the mother. *Reynolds v. Kimmons*, 569 P.2d 799 (Alaska 1977). As loss of custody is often recognized as "punishment more severe than many criminal sanctions," Annotation, *Right of Indigent Parent to Appointed Counsel in Proceeding for Involuntary Termination of Parental Rights*, 80 A.L.R.3d 1141, 1145; *see also Lassiter*, 452 U.S. 18, 39 n. 4 & n. 5, 101 S.Ct. 2153, 2166 n. 4, n. 5 (Blackmun, J., dissenting), and as it is accomplished through a state mechanism, we think the imprimatur of state involvement here sufficient to necessitate appointed counsel.

Adoption, like marriage and divorce, is wholly a creature of the state. *Flores*, 598 P.2d at 895 ("[t]here is a strong state interest in divorce-child custody proceedings. Unlike commercial contracts, legally binding marriages and divorces are wholly creations of the state."). Resort to the judicial process for none of the parties in this adoption proceeding was voluntary. As with divorce, it was the only way the parties could accomplish their respective objectives.[8]

Only a court may issue a final decree of adoption, and then only if it determines that the requisite consents have been obtained and that the adoption is in the child's best interest. AS 25.23.120(c). The state's participation continues throughout the process. For example, the clerk of the court issues the new birth certificate in the name of the adopted person, AS 25.23.170, the court ensures the legislatively mandated confidentiality of the proceedings, AS 25.23.150, and the Bureau of Vital Statistics maintains records on adoption, AS 25.23.185. Moreover, the decree is fully enforceable by the court. As was said by the California Court of Appeals,

> A stepparent adoption differs from other parental termination cases in that it is not an action brought by the state and argued by state attorneys. But neither is the adoption proceeding a purely private dispute. The state is called upon to exercise its exclusive authority to terminate the legal relationship of parent and child and establish a new relationship, in accordance with an extensive statutory scheme.

*In re Jay [R.]*, 197 Cal.Rptr. at 680.

Recognizing the right to appointed counsel for Ronald in this case follows the trend of court decisions which have recognized the importance of parental rights and the finality of terminating them. We have previously held that parents have a constitutional right to the effective assistance of counsel in proceedings brought by the state to terminate their parental rights. *V.F. v. State*, 666 P.2d 42 (Alaska 1983). There we acknowledged the growing number of

---

**8.** *See Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (divorce proceedings must meet due process requirements). The United States Supreme Court elaborated in *Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981), where it held that a statute requiring an indigent putative father to pay for blood group tests in a paternity proceeding violated due process:

> In *Boddie*, we held that due process prohibits a state from denying an indigent access to its divorce courts because of inability to pay filing fees and costs. However, in *United States v. Kras*, 409 U.S. 434, 34 L.Ed.2d 626, 93 S.Ct. 631 (1973), and in *Ortwein v. Schwab*, 410 U.S. 656, 35 L.Ed.2d 572, 93 S.Ct. 1172 (1973),

> the Court concluded that due process does not require waiver of filing fees for an indigent seeking a discharge in bankruptcy or appellate review of an agency determination resulting in reduced welfare benefits. Our decisions in *Kras* and *Ortwein* emphasized the availability of other relief and the less "fundamental" character of the private interests at stake than those implicated in *Boddie*. Because appellant has no choice of an alternative forum and his interests, as well as those of the child, are constitutionally significant, this case is comparable to *Boddie* rather than to *Kras* and *Ortwein*.

> *Id.* 452 U.S. at 16 n. 12, 101 S.Ct. at 2210 n. 12.

jurisdictions which have held that the right to counsel in termination proceedings exists under a state constitution. *Id.* at 45. The rationale of *V.F.* applies equally to the adoption context. *See* Medine, *The Constitutional Right to Expert Assistance for Indigents in Civil Cases,* 41 Hast.L.J. 281, 323 (1990).[9]

We have also held that a party has a constitutional right to court-appointed counsel in a private child custody proceeding in which his or her spouse is represented by the Alaska Legal Services Corporation. *Flores,* 598 P.2d at 893. There we quoted with approval from the decision of the United States Court of Appeals for the Ninth Circuit in *Cleaver v. Wilcox,* 499 F.2d 940, 945 (9th Cir.1974) (footnote omitted):

> Parents are entitled to a judicial decision on the right to counsel in each case. The determination should be made with the understanding that due process requires the state to appoint counsel whenever an indigent parent, unable to present his or her case properly, faces a substantial possibility of the loss of custody or of prolonged separation from a child.

*Flores,* 598 P.2d at 895. *See also Reynolds v. Kimmons,* 569 P.2d 799, 802 (Alaska 1977).[10]

▬ Providing counsel to an indigent parent in an AS 25.23.050(a) proceeding also gives substance to other protections that we have recognized. For example, a prospective adoptive parent must prove by clear and convincing evidence that a biological parent's failure to communicate with a child was without justifiable cause. *In re Adoption of B.S.L.,* 779 P.2d 1222 (Alaska 1989). Also, AS 25.23.050(a) must be strictly construed in favor of the natural parent and against a finding that the failure to communicate was without justifiable cause. *Id.* at 1224.

In support of our holding in the case at bar, we find persuasive the analysis in *In re Adoption of R.I.,* 455 Pa. 29, 312 A.2d 601 (1973). There the Pennsylvania Supreme Court had to determine whether an indigent natural parent was entitled to legal counsel to contest a petition for involuntary termination of parental rights pursuant to a report of intent to adopt her child. Establishing her entitlement, the court noted,

> A parent's concern for the liberty of the child, as well as for his care and control, involves too fundamental an interest and right ... to be relinquished to the State without the opportunity for a hearing, with assigned counsel if the parent lacks the means to retain a lawyer. To deny legal assistance under such circumstances would—as the courts of other jurisdictions have already held ... constitute a violation of his due process rights and, in light of the express statutory provision for legal representation for those who can afford it, a denial of equal protection of the laws as well.

*Id.* 312 A.2d at 602 (quoting *In re B.,* 30 N.Y.2d 352, 334 N.Y.S.2d 133, 136, 285 N.E.2d 288, 290 (1972)). The Pennsylvania court explained that unlike a case where a parent voluntarily relinquishes her child, here the appellees attempted to terminate parental rights against appellant's opposition. "In such a proceeding, it would be grossly unfair to force appellant to defend against the appellees' case without the assistance of someone, trained in the law, who could test the appellees' case by the rules of evidence and the techniques of cross-examination." *Id.* 312 A.2d at 603.

Similarly, we find persuasive the California Court of Appeals' analysis in *In re Jay [R.],* 150 Cal.App.3d 251, 197 Cal.Rptr. 672, 678 (1983), which held that "due process requires appointment of counsel for indigent noncustodial parents accused of ne-

---

**9.** We agree that "[t]he effect of an adoption-based termination is identical to a termination based on abandonment. The result in both cases is the complete severance of the parent-child relationship." Note, *Abandonment v. Adoption: Terminating Parental Rights and the Need for Distinct Legal Inquiries,* 7 Alaska L.Rev. 247, 256 (1990).

**10.** In *Flores,* Justice Connor noted that the Alaska Legal Services Corporation is technically a private corporation and not an agency of the state or federal government. *Flores,* 598 P.2d 893, 900 n. 8 (Connor, J., dissenting in part, concurring in part).

glect in stepparent adoption proceedings, if indigency is demonstrated and appointment of counsel is requested." There, like here, the stepfather desired to adopt the child, the mother was prepared to consent, and both argued that the consent of the natural father was unnecessary because for a period in excess of one year, he "wilfully failed to communicate with and to pay for the care, support and education of [the child]." *Id.* 197 Cal.Rptr. at 675. That court noted that in California (like Alaska), courts do not weigh the factors in a due process analysis against a "presumption" that appointed counsel is required only if a person's physical liberty is at stake. *Id.* at 679. Therefore, it engaged in a due process analysis identical to the one we conducted above and concluded that the objecting parent's interest, along with the risk of erroneous results, outweighed the state's interest which was largely financial.[11]

In general,

courts when confronted with the issue have generally held that in the absence of statute, an indigent parent is entitled as a matter of procedural due process to appointed counsel when faced with loss of child custody or permanent termination of parental rights.

Annotation, *Right of Indigent Parent to Appointed Counsel in Proceeding for Involuntary Termination of Parental Rights,* 80 A.L.R.3d 1141, 1144–45 (footnotes omitted).[12]

Our holding goes no further in recognizing the importance of counsel for the indigent than this state has already acknowledged in similar areas. For example, Appellate Rule 209(a) allows for appeals at public expense in civil matters. Individuals who appeal from a judgment of divorce awarding custody of the children to the other party can move to appeal under this provision. *Johnson v. Johnson,* 544 P.2d 1028 (Alaska 1976). Adoption Rule 8(b) enunciates three situations where the court shall appoint counsel at public expense in the adoption context.[13] Under Delinquency Rule 16(b), the court is authorized to ap-

**11.** *See also In re Appeal in Pima County Juvenile Action,* 131 Ariz. 100, 638 P.2d 1346 (App.1981), where the Arizona Court of Appeals held it was a denial of procedural due process when a convicted felon was not informed of his statutory right to the appointment of counsel in contesting a severance petition filed by the natural mother. We note that other courts faced with the constitutional issue have been able to avoid it by relying on either court rules or a statute to provide counsel for the indigent. *See, e.g., In re Fernandez,* 155 Mich.App. 108, 399 N.W.2d 459 (1986) (court rules and supreme court precedent required that indigent parent should have had court appointed counsel to challenge petition to adopt filed by stepfather); *In re Adoption of Sotelo,* 130 Ill.App.3d 398, 85 Ill.Dec. 685, 474 N.E.2d 413 (1985) (statute provided right to counsel for indigent mother having her parental rights terminated pursuant to an adoption petition by adopting parents). *Cf. Casper v. Huber,* 85 Nev. 474, 456 P.2d 436, 437 (1969) (court refused to decide whether appointment of appellate counsel is required by the Nevada constitution or the federal constitution when terminating parental rights pursuant to a petition filed by the aunt and uncle to adopt because appeal was frivolous on the merits).

**12.** *See also In re Jay [R.],* 197 Cal.Rptr. at 678 n. 7 (listing jurisdictions that have held indigent parents entitled to appointed counsel in custody or termination proceedings on state and federal constitutional grounds alone); Note, *The Right to Appointed Counsel for Indigent Civil Litigants:*

*The Demands of Due Process,* 30 Wm. & Mary L.Rev. 627, 632–639 (1989).

Indeed, in *Lassiter,* the Supreme Court noted that "[i]nformed opinion has clearly come to hold that an indigent parent is entitled to the assistance of appointed counsel not only in parental termination proceedings, but also in dependency and neglect proceedings as well." 452 U.S. at 33–34, 101 S.Ct. at 2163 (citing IJA–ABA Standards for Juvenile Justice, Counsel for Private Parties 2.3(b) (1980); Uniform Juvenile Court Act § 26(a), 9A ULA 35 (1979); National Council on Crime and Delinquency, Model Rules for Juvenile Courts, Rule 39 (1969); U.S. Dept. of HEW, Children's Bureau, Legislative Guide for Drafting Family and Juvenile Court Acts § 25(b) (1969); U.S. Dept. of HEW, Children's Bureau, Legislative Guides for the Termination of Parental Rights and Responsibilities and the Adoption of Children, Pt. II, § 8 (1961); National Council on Crime and Delinquency, Standard Juvenile Court Act § 19 (1959), and acknowledging thirty-three state statutes providing for the appointment of counsel in termination cases).

**13.** Adoption Rule 8(b) states,

(1) the court shall appoint counsel at public expense pursuant to Administrative Rule 12(d)(2)(B)(i) to represent an indigent parent of an Indian child.

(2) The Court shall appoint the Office of Public Advocacy to represent an indigent parent against whom an involuntary termination

point counsel for a juvenile not represented by counsel of choice. Under Administrative Rule 12(d)(2)(B)(i), the court can appoint an attorney at public expense "for biological parents in adoption cases to the extent required by the Indian Child Welfare Act." Also under Administrative Rule 12, the court can provide an attorney for an indigent parent in a minor guardianship case brought pursuant to AS 13.26.060(d), *see* Alaska R.Admin.P. 12(d)(2)(B)(ii), and for indigent putative fathers in actions to establish paternity where the mother has state representation, *see* Alaska R.Admin.P. 12(d)(2)(B)(v).

The similarity of the interests implicated in each of these situations, where the right to court appointed counsel has been acknowledged, compels the conclusion that the right to court appointed counsel exists here as well.

## IV. CONCLUSION

Ronald Miller unequivocally stated in his affidavit, "I object to the adoption of my daughter [K.L.J.]. I am her father. She is very important to me." Due process requires that this indigent natural parent be appointed an attorney to assist him in demonstrating why his consent to the adoption of his child should not be rendered unnecessary.

REVERSED and REMANDED to the superior court to appoint counsel for Ronald Miller pursuant to Alaska Rule of Administration 12(d)(2)(A) and for such further proceedings as are consistent with this opinion.[14]

of parental rights is sought pursuant to AS 25.23.180(c)(3).

(3) The court also shall appoint counsel at public expense pursuant to Administrative Rule 12 to represent an indigent parent against whom an involuntary termination of parental rights is sought on grounds other than stated in AS 25.23.180(c)(3), if the action is brought by the state or by a party represented by the Alaska Legal Services Corporation or the Alaska Pro Bono Program.
(Footnote omitted).

14. Administrative Rule 12(d)(2)(A) deals with constitutionally required appointments and reads in part,

If the court determines that counsel, or a guardian ad litem, or other representative should be appointed for an indigent person, and further determines that the appointment is not authorized by AS 18.85.100(a) or AS 44.21.410, but in the opinion of the court is required by law or rule, the court shall appoint an attorney who is a member of the Alaska Bar Association to provide the required services.