NORTHCUTT, Judge.
This appeal arises from a contested adoption proceeding in which the trial court terminated the parental rights of the child’s legal father, and approved the child’s adoption by its step-father. We hold that an indigent legal parent is entitled to appointed counsel in an adoption proceeding that involves the involuntary termination of his or her parental rights pursuant to section 63.072(1), Florida Statutes (1993). We reverse, in part, the orders under review, and we remand for a new final hearing.
The child involved in this case was born in 1985. O.A.H. was married to the child’s mother, E.P.A., at the time of the child’s birth and presumptively is the child’s biological father.[1] E.P.A. divorced O.A.H. shortly after the child’s birth and O.A.H. has had little or no contact with the child since that time. Whether he abandoned the child or whether the mother concealed the child is a disputed issue between the parties.
*5 E.P.A’s current husband, R.L.A, filed this adoption proceeding in January 1995. E.P.A. consented to the adoption. See § 63.062, Fla. Stat. (1993). O.A.H. refused to consent. Thus, the adoption petition could only succeed if the court found that O.A.H. abandoned the child. See § 63.072(1), Fla. Stat. (1993).[2] A final judgment of adoption terminates a non-consenting parent’s parental rights. See § 63.172(l)(a), Fla. Stat. (1993).
O.A.H. requested appointed counsel because he was indigent. The trial court denied his request. O.A.H. could not attend the final hearing in person because he is incarcerated, and he failed to attend the hearing telephonically for reasons we need not address. Thus, the evidentiary hearing in which the trial court found clear and convincing evidence of abandonment was conducted without any participation by O.A.H. The trial court entered an order terminating O.A.H.’s parental rights and a separate final judgment of adoption. O.A.H. appeals both orders.
O.A.H. argues that the court erred in denying his request for appointed counsel.[3] A substantially similar issue has arisen previously in Florida, in a different context. In In the Interest of D.B., 385 So.2d 83 (Fla. 1980), the Florida Supreme Court held that the due process clauses of the United States and Florida Constitutions required that indigent parents be furnished appointed counsel in proceedings brought to terminate their parental rights pursuant to chapter 39, Florida Statutes. That right was later codified at section 39.465(1), Florida Statutes (1987).[4]
This ease, however, was brought under chapter 63, Florida Statutes, pertaining to adoptions. Unlike chapter 39, the adoption chapter does not contain a section requiring appointment of counsel for indigent parents. The circuit court declined to appoint counsel for O.A.H. because it believed it had no authority to do so in a chapter 63 proceeding. The parties have not referred us to, nor have we found, any Florida case specifically holding that counsel must be furnished to an indigent parent in a contested adoption proceeding. But our review of analogous Florida case law, as well as authority from other courts, persuades us that counsel must be appointed in cases such as this one.
Our analysis of the issue must begin with a determination whether contested adoption proceedings under chapter 63 involve state action so as to give rise to due process concerns. The cases on appeal in D.B. were dependency proceedings brought under thé then-existing version of chapter 39, which provided that a court could permanently commit a child to the Department of Health and Rehabilitative Services, or to a licensed child-placement agency for adoption. See § 39.41(l)(d)l., Fla. Stat. (1979). The chapter further directed that in any dependency proceeding the state attorney, or his designated representative, would represent the state. See § 39.404(3), Fla. Stat. (1979). As *6 such, the state action necessary to invoke due process protections was clearly present in D.B., although our supreme court did not specifically address that fact.
Undoubtedly, state action is also an essential aspect of a contested adoption proceeding under chapter 63, albeit in a more limited way. Although such litigation is between private parties, the power to terminate the rights of the nonconsenting parent is vested solely in the judicial branch of the state government. Indeed, as stated in section 63.022(2)(b), Florida Statutes (1993), one of the “basic safeguards” of the adoption chapter is to provide that “[t]he required persons consent to. the adoption or the parent-child relationship is terminated by judgment of the court.” (emphasis supplied).
In an analogous case, M.L.B. v. S.L.J., 519 U.S. 102,-, 117 S.Ct. 555, 564 n. 8, 136 L.Ed.2d 473 (1996), the United States Supreme Court noted that the parental termination proceeding before it was not brought by a state agency; rather, it was initiated by private parties as a prelude to an adoption. Regardless, the Court observed, the challenged state action was the same: imposition of an official decree extinguishing, as no power other than the State can, the parent-child relationship. Cf. Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (holding that divorce proceedings must meet due process requirements; parties can only obtain a divorce through judicial means). Additionally, courts in other states have found that state action is present in adoptions. See Matter of K.L.J., 813 P.2d 276 (Alaska 1991) (explaining that State’s involvement in a contested adoption is sufficient to warrant appointment of counsel for an indigent parent; only a court may issue a final decree of adoption; State’s involvement continues after the adoption, State issues a new birth certificate, and the decree is fully enforceable in court); In re Jay [R.], 150 Cal.App.3d 251, 197 Cal.Rptr. 672, 680 (1983) (holding that an adoption proceeding is not a purely private dispute; State has exclusive authority to terminate legal relationship of parent and child and establish a new relationship pursuant to its statutory scheme); Matter of Adoption of K.A.S., 499 N.W.2d 558 (N.D.1993) (finding that State’s involvement in adoption is substantial; termination of parental rights is accomplished through a state mechanism; state agencies remain involved throughout the proceedings). Accordingly, we hold that a contested adoption proceeding involves state action sufficient to invoke due process concerns.
Having reached that conclusion, we easily see that the principles described by the D.B. court are controlling here. As that court observed, the extent of procedural due process protection varies with the character of the interest involved and the nature of the proceeding. See D.B., 385 So.2d at 89 (citing Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). The D.B. court recognized that a parent has a constitutionally protected interest in preserving the rights and prerogatives associated with parenthood. The court also recognized that the nature of a proceeding under chapter 39 poses a direct threat to that interest. An order terminating parental rights under chapter 39 “permanently deprive[s] the parent[ ] ... of any right to the child” and the court is required to “place the child in the custody of the department for the purpose of adoption or place the child in the custody of a licensed child-placing agency for the purpose of adoption.” § 39.469(2) and (3), Fla. Stat. (Supp. 1994).
A contested adoption proceeding has precisely the same effect on the same constitutionally protected interests of the non-consenting parent. As mentioned, the judicial termination of that party’s parental rights is a prerequisite to the child’s adoption by another. A judgment of adoption “relieves the birth parent[ ] of the adopted person ... of all parental rights and responsibilities,” and “terminates all legal relationships between the adopted person and his relatives, including his" birth parent! ] .... ” § 63.172(1)(a) and (b), Fla. Stat. (1993).
The fact that due process concerns exist does not always mandate appointment of counsel, however; some courts have adopted a case-by-case approach to determine whether counsel should be provided. In Potvin v. Keller, 313 So.2d 703 (Fla.1975), our supreme court applied a five factor test to assess *7 whether counsel should be appointed for parents in a dependency case involving temporary state custody of their child.[5]
In D.B., the court held that a case-by-case determination was appropriate in proceedings that do not threaten to permanently deprive a party of his or her parental rights. But it noted that if a proceeding might result in an indigent’s permanent loss of parental rights, application of the Potvin factors must always lead to the appointment of counsel. The court held that, under the due process clauses, of the United States and Florida Constitutions, “where permanent termination ... might result, counsel must be appointed for (1) the natural married or divorced indigent parents of the child_” D.B., 385 So.2d at 91.
The year after D.B. was decided, the United States Supreme Court announced Lassiter v. Department of Social Services of Durham County, N.C., 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981), in which the Court iterated its long-standing recognition that a parent’s desire for and right to the custody and companionship of his or her children is an important interest that warrants deference. The Lassiter Court held that the due process clause of the United States Constitution does not require appointment of counsel in every proceeding involving termination of parental rights, and left the issue to the trial courts to be determined on a case-by-case basis. 452 U.S. at 31-32, 101 S.Ct. at 2162. But the Court concluded its opinion with the observation that informed opinion had come to hold that an indigent parent was entitled to appointed counsel in parental termination proceedings, and it emphasized that its decision in no way was meant to imply that this view, held by the majority of states, was “other than enlightened or wise.” 452 U.S. at 34, 101 S.Ct. at 2163.
In the years following Lassiter, Florida’s supreme court has continued to confirm that D.B. stands for the proposition that a constitutional right to appointed counsel arises when the proceeding can result in a permanent loss of parental rights. See In the Interest of E.H., 609 So.2d 1289, 1290 (Fla. 1992); In re T.W., 551 So.2d 1186, 1196 (Fla.1989).
We believe that D.B. mandates the appointment of counsel to represent a non-consenting parent in a contested adoption proceeding when the parent' is indigent and his or her consent to the adoption is sought to be excused under section 63.072(1), Florida Statutes (1993). Courts in other states have reached similar conclusions. See Matter of K.L.J., 813 P.2d at 283-284; In re Jay [R.], 150 Cal.App.3d at 265, 197 Cal.Rptr, at 681; Matter of Fernandez, 155 Mich.App. 108, 112, 399 N.W.2d 459, 461 (1986); Adoption of K.A.S., 499 N.W.2d at 566.
We reverse the October 25, 1996 order terminating O.A.H.’s parental rights. With one exception, we reverse all portions of the final judgment of adoption, and we remand for a new final hearing at which O.A.H. must be, represented by appointed counsel. Paragraph twelve of the final judgment of adoption authorizes a name change for the child so that its name aligns with E.P.A.’s current name. We leave that paragraph standing in order to lessen our decision’s impact on the child’s life pending the final resolution of this litigation. Indeed, O.A.H. might not prevail on remand. And even if he does prevail, the name change may well be appropriate in light of the facts in this case. Accordingly, the trial court should not reinstate the child’s prior name unless the evidence on remand warrants that action.
Affirmed in part, reversed in part, and remanded.
PARKER, C.J., and ALTENBERND, J., concur.

. Although this is an appeal from an adoption proceeding and not from a typical termination of parental rights, we follow Florida Rule of Appellate Procedure 9.146(e) in referring to the parties by initials.

.Section 63.072 provides that "[t]he court may excuse the consent of the following individuals to an adoption:
(1) A parent who has deserted a child without affording means of identification or who has abandoned a child;
(2) A parent whose parental rights have been terminated by order of a court of competent jurisdiction;
(3) A parent judicially declared incompetent for whom restoration of competency is medically improbable;
(4) A legal guardian or lawful custodian of the person to be adopted, other than a parent, who has failed to respond in writing to a request for consent for a period of 60 days or who, after examination of his written reasons for withholding consent, is found by the court to be withholding his consent unreasonably; or
(5) The spouse of the person to be adopted, if the failure of the spouse to consent to the adoption is excused by reason of prolonged, unexplained absence, unavailability, incapacity, or circumstances that are found by the court to constitute unreasonable withholding of consent.”

. Our resolution of this issue obviates our discussion of O.A.H.'s two other contentions.

. As legislated, the right to appointed counsel in Chapter 39 proceedings appears to be broader than that mandated by In the Interest of D.B., 385 So.2d 83 (Fla. 1980). Whereas D.B. held that in certain circumstances counsel must be appointed for a parent, 385 So.2d at 91, section 39.465(1), Florida Statutes (1987), provides that "the court shall advise the parent, guardian, or custodian of the right to have counsel present” and that "[l]he court shall appoint counsel for insolvent persons.” (emphasis supplied).

. The five factors are:
(1) the potential length of parent-child separation, (2) the degree of parental restrictions on visitation, (3) the presence or absence of parental consent, (4) the presence or absence of disputed issues of fact, and (5) the complexity of the proceeding in terms of witnesses and documents.