921 So.2d 787 (2006)
M.E.K., Mother of J.L.K., a Child, Appellant,
v.
R.L.K., Maternal Grandmother of J.L.K., a Child, Appellee.
Nos. 5D05-1775, 5D05-2144.
District Court of Appeal of Florida, Fifth District.
February 24, 2006.
*788 Ryan Thomas Truskoski of Ryan Thomas Truskoski, P.A., Orlando, for Appellant.
Patricia L. Strowbridge, of Patricia L. Strowbridge, P.A., Orlando, for Appellee.
PLEUS, C.J.
The sole issue in this appeal is whether an indigent mother facing involuntary termination of parental rights in an adoption proceeding has a constitutional right to appointment of trial and appellate counsel. We believe she does and therefore reverse the order denying her counsel. We remand with directions to enter an order appointing trial and appellate counsel nunc pro tunc to the date of the mother's motion to appoint counsel.

Procedural History
J.L.K. was born in September 2004. A month later, the Department of Children and Families sheltered J.L.K. with his maternal grandmother and initiated dependency proceedings based on allegations that his mother was unable to care for him. Prior to the adjudicatory hearing, J.L.K.'s grandmother moved to dismiss the dependency proceeding on the ground that she would file a separate adoption proceeding pursuant to Chapter 63 and would seek to have the mother's parental rights terminated as part of the adoption. The dependency court abated the dependency proceeding to allow the adoption to proceed.[1]
In March 2005, the grandmother filed a petition for termination of parental rights pending adoption pursuant to Chapter 63 of the Florida Statutes. The lower court terminated the mother's parental rights by default after the mother failed to file a responsive pleading. She was incarcerated at the time.
Subsequently, the mother's attorney in the dependency action filed a notice of appearance in the adoption action. He also filed an affidavit of indigency, motion to appoint counsel and motion to vacate the final judgment and set aside default.
The mother's appellate attorney appealed the final judgment terminating her parental rights and also filed a motion in the lower court to appoint appellate counsel. The court denied the motions to appoint trial and appellate counsel in the adoption proceeding. The mother appealed this order as well. We consolidated *789 these appeals[2] and temporarily relinquished jurisdiction, after which the lower court approved the parties' stipulation to set aside the final judgment and reinstate the dependency proceedings. Based on this development, we acknowledged dismissal of appeal of the final judgment but agreed to proceed with the appeal of the order denying appointed counsel.

Analysis
In a 1980 appeal of an order terminating parental rights under Chapter 39, the Florida Supreme Court held that an indigent parent has a right, under both the Florida and United States Constitutions, to appointed counsel in "proceedings involving the permanent termination of parental rights to a child." In the Interest of D.B., 385 So.2d 83, 90 (Fla.1980).
A year later, in Lassiter v. Dep't of Social Serv. of Durham County, N.C., 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the U.S. Supreme Court held that the federal due process clause does not require appointed counsel in every state-initiated termination of parental rights proceeding. Instead, it required trial courts to evaluate the need for counsel on a case-by-case basis. Id. at 31-32, 101 S.Ct. 2153. The court noted that it was only determining the minimum due process standard under the federal constitution and that many states have higher standards based on wise public policy. Id. at 33-34, 101 S.Ct. 2153.
In O.A.H. v. R.L.A., 712 So.2d 4 (Fla. 2d DCA 1998), the second district held that an indigent parent has a constitutional right to appointed counsel in a Chapter 63 involuntary adoption proceeding. It recently reaffirmed that holding in In the Interest of M.C., 899 So.2d 486 (Fla. 2d DCA 2005). Both O.A.H. and M.C. are similar to the instant case in that they involved indigent parents who did not attend the final hearing in which their parental rights were terminated because they were incarcerated at the time.
In denying the mother's requests for appointed counsel, the lower court declined to follow O.A.H. or M.C., stating:
Ordinarily, the Court would be bound by precedent from another District Court of Appeal in the absence of contrary authority from the Fifth District Court of Appeal. However, the Court in this matter is bound by the U.S. Supreme Court decision in Lassiter v. Department of Social Services of Durham County, N.C., 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981). Pursuant to Lassiter, because this is a private termination of parental rights action there is no state action and accordingly the Mother is not entitled to Court appointed trial or appellate counsel.
We disagree with this reasoning for the following reasons. First, the lower court erroneously concluded that there was no state action in this private termination of parental rights action. It cited Lassiter in support of its conclusion. Nowhere in Lassiter does it say that a private termination of parental rights action does not involve sufficient state action to trigger due process protection. Even if Lassiter had stated such a proposition, it would be dictum because Lassiter involved a state-initiated termination of parental rights action.
Moreover, in M.L.B. v. S.L.J., 519 U.S. 102, 117 n. 8, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), the United States Supreme Court noted that whether a parental *790 termination proceeding is brought by a state agency or a private party as a prelude to adoption, "the challenged state action remains essentially the same: ... imposition of an official decree extinguishing, as no power other than the State can, [the] parent-child relationships." The second district relied on M.L.B. in O.A.H. to find that "a contested adoption proceeding involves state action sufficient to invoke due process concerns." 712 So.2d at 6. We agree with the second district that judicial termination of parental rights in a privately initiated involuntary adoption proceeding is state action that is sufficient to trigger due process protection to an indigent parent.
Second, as noted previously, Lassiter does not control because it involved a state-initiated termination proceeding. This case involves a privately-initiated termination proceeding. On the contrary, both O.A.H. and M.C. involved private termination proceedings and therefore should have controlled the lower court's decision.
Third, Lassiter addressed only the minimum due process requirements under the federal due process clause. The citizens of Florida are also protected by the due process clause in Article 1, section 9 of the Florida Constitution. In our federal system of jurisprudence, the United States Constitution establishes the minimum level of due process protections for all people, but state constitutions and laws may provide additional due process protections. Traylor v. State, 596 So.2d 957, 961 (Fla. 1992).
In the area of termination of parental rights, the Florida due process clause provides higher due process standards than the federal due process clause. Under the federal provision, Lassiter does not require appointment of counsel in every case. It only requires a case-by-case determination. But under the state due process clause, D.B. requires appointment of counsel in "proceedings involving the permanent termination of parental rights to a child." D.B., 385 So.2d at 90. O.A.H. noted that:
In the years following Lassiter, Florida's supreme court has continued to confirm that D.B. stands for the proposition that a constitutional right to appointed counsel arises when the proceeding can result in a permanent loss of parental rights. See In the Interest of E.H., 609 So.2d 1289, 1290 (Fla.1992); In re T.W., 551 So.2d 1186, 1196 (Fla.1989).
O.A.H., 712 So.2d at 6.
For these reasons, the lower court should have followed O.A.H. and M.C. rather than Lassiter. See, e.g., Scottsdale Ins. Co. v. Desalvo, 666 So.2d 944, 946 (Fla. 1st DCA 1995) (holding that a trial court is obliged to follow binding precedent from another district court in absence of contrary precedent from supreme court or its own district court of appeal).
Alternatively, the grandmother argues that even if the trial court was obligated to follow O.A.H., this Court is free to disagree with it. See Scottsdale, 666 So.2d at 946. She urges us to reject O.A.H., claiming that it disregards the underlying reasons for appointing counsel and because its broad interpretation of state action creates a slippery slope that will obligate the state to provide counsel in many other types of civil cases. The grandmother is wrong on both counts.
In M.L.B., the United States Supreme Court rejected a similar slippery slope argument. M.L.B. involved the right of an indigent parent to have the state pay for a transcript of the hearing in an appeal of a private termination of parental rights case. Justice Thomas argued in dissent that extending due process protections found in criminal cases involving the loss of one's liberty to a civil case involving termination of parental rights would create a dangerous precedent used to extend such protections *791 to other civil cases. M.L.B., 519 U.S. 102, 141-143, 117 S.Ct. 555 (Thomas, J., dissenting).
The majority rejected this argument, noting that termination of parental rights work "unique kind of deprivation" involving the "awesome authority of the State" to permanently destroy legal recognition of the parental relationship. Id. at 128, 117 S.Ct. 555. Therefore, finding certain due process protections applicable in termination of parental rights cases could not be used as precedent to extend such protections to other civil cases. Id. The same analysis is true in the instant case. Finding a right to counsel in a civil termination of parental rights case does not create a dangerous precedent for finding such a right in other civil cases because other civil cases do not involve the same unique deprivation of a fundamental right by the State.
The grandmother also argues that O.A.H. ignores the underlying reasons for appointing counsel. She instead urges us to apply the factors found in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), for determining whether a right to counsel exists.[3] However, D.B. makes clear that in the context of determining whether a right to appointed counsel exists in a case involving the parent-child relationship, Florida courts must weigh the factors enunciated in Potvin v. Keller, 313 So.2d 703 (Fla.1975), not Mathews. 385 So.2d at 90. Those factors include: (1) the potential length of parent-child separation, (2) the degree of parental restrictions on visitation, (3) the presence or absence of parental consent, (4) the presence or absence of disputed facts, and (5) the complexity of the proceeding in terms of witnesses and documents. The D.B. court further stated that in applying these factors, "counsel will always be required where permanent termination of custody might result, but where there is no threat of permanent termination of parental custody, the test should be applied on a case-by-case basis." Id. at 91. The second district in O.A.H. saw no distinction between state-initiated and privately-initiated termination proceedings as they relate to the appointment of counsel. We do not either.
We also note that the first district recently reached the same conclusion in G.C. v. W.J., 917 So.2d 998 (Fla. 1st DCA 2005). G.C. followed D.B. and O.A.H. in holding that there is a constitutional right to appointed counsel in a Chapter 63 termination of parental rights proceeding.
We therefore hold, as our sister courts have, that article 1, section 9 of the Florida Constitution mandates that counsel be appointed to an indigent parent in an involuntary termination of parental rights proceeding under Chapter 63. Accordingly, we reverse the order denying appointed counsel and remand directing the trial court to enter an order appointing trial and appellate counsel nunc pro tunc to the date of the mother's motion to appoint counsel.
REVERSED AND REMANDED WITH DIRECTIONS.
SAWAYA and ORFINGER, JJ. concur.
NOTES
[1] The mother appealed the abatement order, which we per curiam affirmed. See M.K. v. Dep't of Children & Families, 910 So.2d 279 (Fla. 5th DCA 2005) (table).
[2] Our case numbers 05-1775 (final judgment terminating parental rights) and 05-2114 (order denying appointment of counsel).
[3] Those factors are (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335, 96 S.Ct. 893.